## Case No. 11,935.

### Ex parte ROBINSON.

[6 McLean, 355;[1] 3 Liv. Law Mag. 386.]

Circuit Court, S. D. Ohio. April Term, 1855.

HABEAS CORPUS — CONFLICTING AUTHORITY — CONCURRENT JURISDICTION — CONSTRUCTION OF FEDERAL LAW.

1. A writ of habeas corpus may issue to relieve an officer of the federal government who has been imprisoned under state authority for the performance of his duty.

[Cited in Ex parte Sifford, Case No. 12,848; Re McDonald, Id. 8,751; U. S. v. Jailer, Id. 15,463; Re Neill, Id. 10,089; Re Bull, Id. 2,119; Cunningham v. Neagle, 135 U. S. 74, 10 Sup. Ct. 672. Quoted in Re Neagle, 39 Fed. 850.]

[Cited in Re Crow, 60 Wis. 351, 19 N. W. 713. Cited in brief in Ex parte Holman, 28 Iowa, 94.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

2. Where concurrent jurisdiction may be exercised by the federal and state authorities, the court which first takes jurisdiction can be interfered with by no other court, state or federal. It is a subversion of the judicial power to take a case from a court having jurisdiction, before its final decision is given.

[Cited in Re Boston, H. & E. R. Co., Case No. 1,677; Blake v. Alabama & C. R. Co., Id. 1,493; Johnson v. Bishop, Id. 7,373; Wilmer v. Atlantic & R. Air Line Co., Id. 17,775; Taylor v. Carryl, 20 How. (61 U. S.) 597; Georgia v. Bolton, 11 Fed. 218; Bruce v. Manchester & K. R. R. Co., 19 Fed. 344; Senior v. Pierce, 31 Fed. 628.]

[Cited in Ex parte Bushnell, 8 Ohio St. 601. Cited in brief in Corey v. Ripley, 57 Me. 70; Howe v. Freeman, 14 Gray, 568.]

3. It may be considered an open question, whether one decision on a habeas corpus is final.

[Distinguished in Re Crow, 60 Wis. 363.]

4. It should be considered whether all the evidence was heard, and a full trial was had by a judge or court having jurisdiction.

5. The federal authorities follow the established construction of a state law by the supreme court of the state. And the rule should be reciprocal—by the state courts in regard to the federal laws.

6. The powers of the federal courts, in regard to the exercise of their powers under the constitution and laws of the Union, are as distinct as the courts of distinct governments.

At chambers.

[This was a petition by H. H. Robinson, marshal of the United States, for a writ of habeas corpus.]

Mr. Pugh, for the marshal.

Chase & Joliffe, against the discharge.

McLEAN, Circuit Justice. A petition and affidavit of Hiram H. Robinson, marshal of the United States for the above district, stating that he was imprisoned under the order of the Honorable Judge Parker, one of the judges of the court of common pleas for the county of Hamilton, for the performance of his duty as marshal, under process issued by a commissioner of the United States, and praying for a writ of habeas corpus, was presented; which, being granted, the sheriff, in obedience to the command of the writ, brought the petitioner into court, with the following return: "April 8, 1855, for return and answer to the habeas corpus, the sheriff of Hamilton county says, that, by virtue of an order of the court of common pleas, and in pursuance of the command of said order, he arrested the within named H. H. Robinson, and committed him to jail as commanded; and that he now holds him in custody by virtue of said order."

It appears from the facts of the case, that, on the 30th of March last, an affidavit of Lewis Van Slyke was made to Judge Parker, representing himself to be the guardian of Rosetta Armstead, and that said Rosetta was then held in illegal imprisonment by Hiram H. Robinson, United States marshal, under a certain pretended warrant issued by John S. Pendery, claiming to sit as a commissioner

of the circuit court of the United States for the Southern district of Ohio, from which said imprisonment said Rosetta was discharged by order of the honorable court on Thursday, the 29th day of March current, in violation of which said order of this court, and immediately after the said minor was placed in the custody of the affiant, the said Hiram H. Robinson again seized the said minor under the same pretended warrant of said Pendery, and now holds her in illegal imprisonment, &c. Upon which affidavit a writ of habeas corpus was issued. To this writ the marshal made the following return: "The answer of Hiram H. Robinson, marshal of the Southern district of Ohio, says that, on the 20th day of March. 1855, he was and ever since has been marshal as aforesaid, duly appointed and qualified; that on said day a warrant was delivered to him by John L. Pendery, commissioner of the United States, appointed by the circuit court of the United States, which commanded him to arrest Rosetta, a fugitive from labor, &c.; and that, on the 24th of the same month, he produced the said Rosetta before the commissioner, as commanded; and thereupon the hearing of the claim, made by —— Dennison, specified in said warrant, was regularly commenced. That the hearing of the claim has been adjourned from day to day and from time to time before the said commissioner, and that the determination thereof yet remains to be made. That on the 30th of March aforesaid, and before the delivery to the respondent of this writ, the commissioner adjourned the trial and determination of the claim until Tuesday morning, the 3d day of April, at ten o'clock; and that the commissioner did then direct the respondent, as marshal, to produce the body of the said Rosetta before him, on the day and at the hour stated, to abide his determination as commissioner in the premises. This respondent, therefore, respectfully denies the right and jurisdiction of the court of common pleas of Hamilton county to compel him to produce the body of the said Rosetta before it, under the circumstances stated." It is admitted that before the warrant of the commissioner was issued, the colored girl Rosetta was taken by a habeas corpus at Columbus, in Ohio, while passing through the state with the agent of her master, before a judge of probate, who decided that she was free, and at the same time appointed Van Slyke her guardian.

The seventh section of the act of congress of the 2d of March, 1833 [4 Stat. 634], provides "that either of the justices of the supreme court, or a judge of any district court of the United States, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in all cases of a prisoner or prisoners, in jail or confinement, where he or they shall be committed or confined on or by any authority or law, for any act done or omitted to be done in pursuance of a law of the United States, or any order, process, or decree of any judge or court thereof; any thing in any act of congress to the contrary notwithstanding. And if any person to whom such writ of habeas corpus may be directed shall refuse to obey the same, or shall neglect or refuse to make return, or shall make a false return thereto, in addition to the remedies already given by law, he or they shall be deemed and taken to be guilty of a misdemeanor, and shall, on conviction before any court of competent jurisdiction, be punished by fine not exceeding one thousand dollars, and by imprisonment not exceeding six months, or by either, according to the nature and aggravation of the case." This section, which regulates the writ of habeas corpus, was enacted to meet the nullification doctrines proclaimed by South Carolina, but which, in this respect, it is believed, were never acted upon by that state. Little was it supposed that the principle could ever have a necessary application to the northern or western states, whose members of congress advocated and voted for the law. The right to issue the writ can only arise by a total nullification of the federal authority, and the imprisonment of one of its officers, not for a crime, but for the performance of duties enjoined on him by law, and which he has sworn to perform.

It is contended that the case under consideration is not within this statute. The marshal omitted to do the act ordered to be done by the Honorable Judge Parker, because it would be in express violation of his duty under an act of congress. This is literally within the act. But it is alleged the commissioner has no authority to act judicially, as he was not appointed as judges are required to be appointed by the constitution. The second section of the second article of the constitution provides "that congress may by law vest the appointment of such inferior officers as they think proper in the president alone, in the courts of law, or in the heads of departments." By the fugitive act of 1850 [9 Stat. 462], the commissioners appointed by the circuit courts of the United States have concurrent jurisdiction with the judges of the circuit and district courts of the United States, &c. These commissioners were appointed under the act of 1842; and under that act they had power to issue warrants, to arrest persons who had committed offences under the law of the United States, and on hearing, commit them, hold them in bail to answer, or to discharge them, as in their judgment the law required. The nature of the duties of the commissioners under the act of 1850 is not, in principle, different from those which they previously discharged. The inquiry of a commissioner or a judge under the fugitive act is not strictly whether the person is free, but whether he owes service to the claimant. In its results the inquiry may involve the liberty of the fugitive; but the principle applies to an apprentice as well as to a slave. It must be admitted that this

inquiry is somewhat in the nature of judicial power; but the same remark applies to all the officers of the accounting departments of government. They investigate claims, and decide on the evidence. The examiners in the patent office determine on the merits and novelty of inventions. This becomes a judicial duty in every suit between conflicting patents. It is impracticable, in carrying on the machinery of government, to prescribe precise limits to the exercise of executive and judicial power in deciding upon claims. The supreme court has had the acts of these commissioners before it, and has always treated them as having authority under the law.

Two grounds are urged by counsel as sustaining the jurisdiction of the state judge: (1) That before the fugitive was arrested by the marshal, she was declared to be free by the probate court. (2) That the warrant was defective in not stating that the girl escaped from the state in which she was held as a slave. It must be admitted that the authorities are not uniform on the point, whether the decision on a habeas corpus is final. This may be said of the authorities in this country and in England. I have been myself inclined to think such a decision should be considered final, where there was clearly jurisdiction and a full and fair hearing; but that it might not be so considered when any of these requisites were wanting, or when new and important evidence could be obtained. Some years since I was consulted by a commissioner on the propriety, after a hearing, of giving time to obtain new evidence. Several unimpeached witnesses swore positively to the identity of the fugitive. I advised that time should be given, and eventually it was satisfactorily shown that the first witnesses were mistaken, and that the fugitive was living in Canada. This discharged him from custody. It would be difficult to find any provision in the act of 1850 under which a state judge can exercise jurisdiction. The act is special and stringent. Officers are named in the statute whose duty it is to act when cases are brought before them. There is no reference to state authorities, I believe, either directly or indirectly. There is no law in Ohio which authorizes state judges to act. It is true that the act of 1793 did authorize state magistrates to exercise jurisdiction under it, and that act has only been repealed so far as repugnant provisions are contained in the act of 1850. But it is not necessary to the decision of the case in hand to hold that the decision of the probate judge was not final; nor is it necessary to show that the warrant had no defects. It may be admitted that the first decision on the habeas corpus was a bar to the inquiry before the commissioner, and that the warrant was defective; but can a state judge take jurisdiction on these grounds? It is the exercise of an appellate power, which is not given by the laws of the United States or the laws of the state. Suppose these objections had

been made before the commissioner, he could have considered them. In regard to the warrant, he could have amended it if necessary. But it would not have been necessary. The fugitive being in the custody of the marshal, with the consent and at the request of the master, she was lawfully held for the purpose of the inquiry. And as to the decision of the probate court, whether it constituted a bar to the proceedings, it was a matter for the decision of the commissioner.

I think these grounds are unprecedented in judicial proceedings, except, perhaps, in the decision of the supreme court in Wisconsin. That court sat as a court of errors on the proceedings of the district court of the United States. That case, I observed, received high commendation in the argument before the state judge; but, as it may come before the supreme court for revision, it is not fit that I should speak of it in regard to the federal powers. I will, however, refer to the Revised Statutes of Wisconsin, p. 730, § 22. which authorizes the prisons of the state to be used by the United States, and the sheriff and his deputies are required to keep the prisoners safely "until they be discharged by due course of the laws of the United States." It must be recollected that when the habeas corpus was served upon the marshal, the case before the commissioner was in progress, and near its termination. Is there any precedent for such a procedure? If the state court had a concurrent power, the proceeding would have been irregular and void. Under the same government I could not have interposed. But that a court of a different government could interpose in this form, is sanctioned by no law or precedent. Before the supreme court of Wisconsin reversed, as a court of error, the decision of the district court, it had the grace to wait until that court had finally decided. It is not usual in legal proceedings to plead a former recovery or a former acquittal. Can any court interfere in such cases and take the case from the court in which the jurisdiction is vested? If the commissioner did wrong, does that authorize the state judge to interpose by writ of habeas corpus, and withdraw the case from the federal jurisdiction?

It is a general principle of law, to which I know of no exception, that the laws of every government shall be construed by itself; and such construction is acted upon by the judiciary of all other countries. By the federal constitution "the judicial power of the United States is declared to be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish." Under this provision the judiciary of the Union gives a construction to the laws, which is obligatory on the state tribunals. The constitution again declares that "the constitution and laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall

be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." The construction of the statutes of the different states, except where the supreme court of the Union exercises an appellate power, has uniformly been followed by the courts of the United States. This has been carried so far by the supreme court as to reverse its own decisions to conform to a change in the decisions of the state court, and this was on the ground of policy, to avoid two rules of property in the same state. It has been considered as no degradation by the supreme court to follow the established construction of the local laws by the courts of the states. There is no instance, it is believed, where a federal court has disregarded the decisions of a state court, where it possessed no appellate power. Some years ago an individual was indicted for a capital offence in the circuit court of the United States, in which that most learned and able man, Judge Story presided. The same individual was in prison under state process for debt, or some petty offence. The district attorney of the United States moved the court to issue a habeas corpus to bring the defendant before the court; but that learned judge held he had no power to issue the writ for that purpose.

A year or two ago a case similar in principle occurred in the circuit court of the United States for Ohio, and that court held it had no power to take the defendant from the state jurisdiction. In such cases in this state, an arrangement has been made with the state authority to order the accused to be delivered to the marshal, with a pledge that he should be returned to the state jurisdiction; and where a concurrent jurisdiction exists in the federal and state courts, the federal courts have uniformly held the suit in these courts to be abated where the same cause of action has been sued in the state court. I cannot withhold the expression of my surprise at the earnest, if not indignant manner in which the counsel spoke of the conduct of the commissioner in issuing his warrant after the decision of the probate court on the habeas corpus; and an intimation was thrown out that, if the peace of the country is to be preserved, more respect must be shown by the federal authority to the decisions of the state court. There is not the least foundation for this feeling and expression. It arises from an entire misconception of the case under consideration. The commissioner of the United States issued his warrant to arrest the supposed fugitive from labor on the application of the master. There is no evidence that he had any knowledge of the previous decision of the probate judge. No one, I suppose, will allege that he had legal evidence of the fact. But suppose the record had been presented to

him, did he show any want of respect to the state court by issuing the warrant and inquiring into the complaint? This by no means prejudiced the right of the fugitive, as the previous decision could be set up in bar of the procedure, if such decision were final. But I have an authority on this point. Some years ago a habeas corpus was issued by the circuit court of the United States for the Eastern district of New York, to bring before it an individual who had been arrested as a fugitive from justice under our late treaty with England. The circuit court was held by Judge Betts, the district judge, who, on a full examination, remanded the prisoner to be given up under the treaty. Judge Nelson, out of court, issued another habeas corpus, and the prisoner being brought before him, he adjourned the case to the supreme court. When the matter was in discussion before the court, I urged that the second habeas corpus was irregular. The case was dismissed for want of jurisdiction, but a majority of the judges intimated the opinion that the first decision by the circuit court was no bar to the second writ. I differed with my brethren on the question; but as the court did not take jurisdiction, no decision was given in the case. The writ of habeas corpus being returned to Judge Nelson, he discharged the prisoner.

Every one who examines the authority in this country and in England, will find that there have been diversity of judgments on the point whether the decision on a habeas corpus is final; and, after the case above cited, the sympathies of the counsel for the indignity done to the judge of probate may well be spared, as also all apprehensions of the public peace being disturbed for any want of respect by the federal authorities to the state courts. State rights are invoked by the counsel. If these rights are construed to mean a subversion of the federal authorities, they may be somewhat in danger. That the commissioner had jurisdiction in the case is clear. While duly engaged in the investigation of the matter, the honorable judge of the common pleas, whose motives I by no means question, by a habeas corpus, took from the custody of the marshal the body of the fugitive, which left the commissioner without a case. It wrested from him, without any authority of law, the subject of his jurisdiction. This, so far as I know, is without precedent. Had any commissioner or federal judge interposed, and by the same means disregarded and disturbed the jurisdiction of a state court, I should have felt not less concern than the eloquent counsel.

A sense of duty compels me to say that the proceedings of the honorable judge were not only without the authority of law, but against law, and that the proceedings are void, and I am bound to treat them as a nullity. The marshal is discharged from custody.

[For a similar case, see Case No. 11,934.]