## Case No. 4,336.

### Case of ELECTORAL COLLEGE.

[1 Hughes, 571;[1] 9 Chi. Leg. News, 106; 14 Alb. Law J. 448; 4 Cent. Law J. 72.]

Circuit Court, D. South Carolina. Nov., 1876.

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

BOND, Circuit Judge. Upon the petition of several persons, styling themselves the "Board of State Canvassers of South Carolina," which was presented to me on the first day of the regular term, I issued a writ of habeas corpus commanding the sheriff of Richland county, in whose county they were alleged to be, to produce the bodies of the petitioners before me, that I might inquire into the legality of their imprisonment.

This is a motion to dismiss the petition and remand the petitioners into the custody of the sheriff.

Section 755, tit. 13, Rev. St. U. S., provides that "the court or justice to whom application for the writ of habeas corpus is made shall forthwith award it unless it appears from the petition itself that the party is not entitled thereto."

It is not a question, at the time of the application for the writ, whether or not the facts alleged in the petition are true or false.

They are to be verified by the oath of the petitioner, and if he sets out in his petition what is necessary to give a federal court jurisdiction, the writ must issue, and the truth or falsity of the facts alleged must be determined at the hearing.

Whether or not, then, this writ issued properly or improperly depends upon the fact whether the petitioners have embraced in their petition what is necessary to give jurisdiction to the federal courts.

To give such jurisdiction the party must allege that he is in custody in violation of the constitution or of a law of the United States.

These petitioners do allege, in substance, that they were a board of state canvassers, charged with the duty, among others, of canvassing the votes recently cast at a general election, at which members of congress and presidential electors were to be chosen.

That they proceeded to canvass the votes cast, when, on the 13th day of November, 1876, while in discharge of their functions, they were informed an application had been made to restrain them from exercising what they thought to be their powers as a board of canvassers, charged as well with a federal as state trust, and that in consequence of further proceedings against them, under said notice, they are now restrained of their liberty for acts done in pursuance of laws of the United States and are in custody in violation of the constitution and laws of the United States.

When such a petition, including every requirement of the statutes was presented to me there was nothing to be done but to order the writ to issue.

But it is very plain that if these parties are in custody for disobedience of an order of a state court of competent jurisdiction, there is no power in the federal courts to release them.

It is not to the point to show that the order of commitment is erroneous. It must be absolutely void. The judgment of a state court having jurisdiction of the person or thing in controversy must be respected by every other court. It cannot be reviewed except in the way pointed out by the statute.

The first question, then, to be decided at this time and upon this motion is whether or not the supreme court of the state of South Carolina had jurisdiction to hear and determine the matter before it.

Article 1, § 26, of the constitution of South Carolina, provides: "In the government of this commonwealth the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

Section 4 of article 4 of the same instrument, defines the power of the supreme court thus: "The supreme court shall have appellate jurisdiction only in cases in chancery, and shall constitute a court for the correction of errors at law under such regulations as the general assembly may by law prescribe; provided, the said court shall always have power to issue writs of injunction, mandamus, quo warranto, habeas corpus, and such other original and remedial writs as may be necessary to give it a general supervisory control over all other courts in the state."

The powers of the board of state canvassers, so far as this case is concerned, are defined by chapter 8, tit. 2, §§ 24–26, thus:

"Section 24. The board when thus formed shall, upon the certified copies of the statements made by the board of county canvassers, proceed to make a statement of the whole number of votes given at such election for the various officers, and for each of them voted for, distinguishing the several counties in which they were given. They shall certify such statements to be correct, and subscribe the same with their proper names.

"Section 25. They shall make and subscribe on the proper statement a certificate of their determination, and shall deliver the same to the secretary of state.

"Section 26. Upon such statements they shall then proceed to determine and declare what persons have been, by the greatest number of votes, duly elected to such offices, or either of them. They shall have power, and it is made their duty, to decide all cases under protest or contest that may arise, when the power to do so does not, by the constitution, reside in some other body."

And the objection to the jurisdiction of the supreme court made by the petitioners is, that they are a part of the executive department of the government charged with the execution of a law of the state, and that they alone are authorized to canvass the votes, and that they are not subject in the exercise of their functions to the control of the judicial branch of the government.

The supreme court of the United States, in a very able opinion by Mr. Justice Miller, in the case of Gaines v. Thompson, 7 Wall. [74 U. S.] 347, has clearly determined what the law is on this subject, and that is, "that if it appear that the act which the court is asked to compel the officer of the executive department of the government to do be purely ministerial, the court, having jurisdiction to issue the writ of mandamus, may compel the executive officer to perform his duty; but, if the act required to be done by the executive officer be not merely ministerial, but discretionary, or one about which he is to exercise his judgment, a court cannot, by mandamus, act directly upon the officer and guide and control his judgment or discretion in the matters committed to his care in the ordinary exercise of official duty; and the court further says that the interference of the courts with the performance of the ordinary duties of the executive departments would be productive of nothing but mischief, and we are quite satisfied that such a power was never intended to be given them;" and for this Mr. Justice Miller quotes the opinion of Chief Justice Taney, in the case of the Commissioner of Patents v. Whitely, 4 Wall. [71 U. S.] 522, and the law is stated to the same effect in a very celebrated case in Maryland, by Mr. Chief Justice Bowie (Miles v. Bradford, 22 Md. 170), a case where the power of the governor to canvass the votes was not so broadly given as in the case at bar.

That the duty of this board of canvassers was not merely ministerial, but that they were clothed with a large discretion, seems to me, is very plain. They were not merely to take the returns and aggregate them. They were to canvass them. That is, they were to examine, to sift, to scrutinize them, which implies a power to reject such as were not lawful in their judgment; and more, they were to decide all cases under protest or contest that might arise when the power to do so did not, by the constitution. reside in some other body.

They were the executive officers, appointed to declare the election of such persons as had, in their judgment, the majority of the legal votes cast. If they decided erroneously or falsely, the remedy of those candidates who thought themselves wronged was by quo warranto, but no court had the jurisdiction to compel the board of state canvassers to do otherwise than their own judgment dictated.

It remains now to be seen what the court was asked to do by the relators. Their suggestion sets forth: "That the board is proceeding to hear and determine all matters of contest or protest before them in regard to the election of persons who were candidates at the general election, and is proceeding to certify their determination on such contests and protests to the secretary of state." And they pray that a writ of mandamus may issue commanding them to ascertain from "the managers' returns and statements forwarded to them by the boards of county canvassers, the persons who, at the general election held on the said 7th day of November ult., had the highest number of votes; and commanding them and compelling them to revoke and annul any determination or decision which they may have made in any case of contest or protest, if any such there be."

Under the cases cited in the opinion of the supreme court of the United States (Gaines v. Thompson, 7 Wall. [74 U. S.] 347), above referred to, I am of opinion that the supreme court of the state of South Carolina had no jurisdiction to entertain any such "suggestion" or petition.

But it does not follow because a party is in custody by reason of a void judgment of a state court that a federal judge or court has jurisdiction to release him from his imprisonment.

He must be in custody in the language of the statute for an act done or omitted, in pursuance of a law of the United States, or in custody in violation of the constitution of the United States, and the question therefore presents itself whether the board of state canvassers, in exercising their functions in reference to the late general election in the state at which members of congress and electors of president and vice-president were to be chosen, were acting in any respect in pursuance of an act of congress or under the constitution of the United States. That they were so acting is partly shown from the fact that congress has undertaken by statute to punish these state officers for dereliction of duty. Section 5515 of the Revised Statutes of the United States provides, "that every officer of an election at which representatives or delegates in congress are voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority," who commits the acts forbidden by that section, shall be punished as therein provided. This was beyond the power of congress unless these officers were acting in pursuance of a law or under or by virtue of the constitution of the United States.

But that these petitioners, though appointed by the state, are under the protection of the courts of the United States, is apparent from the fact that the board of state canvassers have certain powers to perform the authority for the exercise of which is derived directly from the constitution of the United States.

Section 1, art. 2, of the constitution, provides that electors shall be appointed in such manner as the legislature of each state may direct. When the legislature of a state, in obedience to that provision, has by law directed the manner of appointment of the

electors, that law has its authority solely from the constitution of the United States. It is a law passed in pursuance of the constitution.

In South Carolina the legislature has passed such a law. It has provided that electors shall be chosen by the qualified voters of the state, and the power of the state canvassers to canvass, determine and declare the result of such election, and to hear all questions of protest and contest relative to said officers, is expressly given in the sections of the statute above quoted. Section 2, art. 1, of the constitution of the United States, provides that members of congress shall be chosen by the people of the several states, and in South Carolina the mode of choosing them has been fixed by law, and the board of state canvassers are appointed the proper officers for determining and declaring the result of such election.

An examination of the laws of South Carolina will show "that state and county officers are elected on the same day that electors of president and vice president and representatives to congress are voted for, and that they are voted for on the same general ticket, and that all ballots at the several precincts in each county are deposited in the same box, and are counted and returned by the same set of election officers, and the result of such election is certified to the board of state canvassers by the officers holding the election."

And section 5514, tit. 70, Rev. St. U. S., provides "that any one who is proved to have voted at such general election shall be deemed to have voted for representatives in congress."

The board of state canvassers is required to meet on the 10th day of November for the purpose of sifting, scrutinizing, not merely aggregating, the statements of the county boards. The validity of the entire election in a certain precinct or county depends upon a state of facts applicable to every officer, state or federal, who has been voted for on the general ticket at that particular precinct. So far as the laws of the United States are concerned, at an election where members of congress are to be chosen, any alleged intimidation or violence toward a voter, or other misdemeanor described in section 5511 of the Revised Statutes, would be a proper consideration for the board in determining the result; because such violations of the laws of the United States, if sufficient in degree in the judgment of the board of state canvassers, would control the result.

This is the law of South Carolina as applied concurrently with the paramount law of the land—the acts of congress made in pursuance of the constitution of the United States.

The board of state canvassers was not at liberty in canvassing the votes to shut its eyes to the laws of congress respecting what was a fraudulent poll. In the petition the board alleges it was necessary, in canvassing the returns for federal officers at this general election, when both state and federal officers were voted for on the same ticket, to canvass all the votes polled and to declare the election of state officers after such canvass as well as federal officers, and it is manifest that to determine a general election the amount of fraud and intimidation, if there was any exercised to control the vote for state officers, must have had some influence upon the election of federal officers, and what the effect of it was upon such election, it was for the board to determine.

The return of the sheriff shows that he holds the petitioners under an order of the supreme court, in which it is alleged they are in contempt of that court for disobedience of an order passed in a certain cause.

This cause, by the papers filed, appears to be the case of the state at the relation of R. M. Sims and others against H. E. Hayne, chairman, and others, as members of the state board of canvassers.

We have shown from the "suggestion" itself that in our judgment the court had no jurisdiction to entertain it, and though the returns show that the parties are in custody to-day solely for not obeying the mandate of the court respecting state officers, it is our duty to go behind the returns and look at the case as it presented itself to the supreme court at its inception. U. S. v. Harris, Atlanta Whig, June 13, 1872; Ex parte Bridges [Case No. 1,862].

What the relators asked the court to do in their original suggestion is perfectly plain, and we have above quoted the paragraphs of the "suggestion" which constituted the ground of complaint of the relators. In my judgment, the whole matter was beyond the jurisdiction of the supreme court, and any order passed by them upon such "suggestion" is void.

A commitment for contempt is like any other judgment in a criminal case. While it gives me great concern to hear and determine a cause where parties are charged with disobedience to the orders of a state court, yet where the liberty of men is concerned, who have a right to appeal, under the act of congress, to the federal courts, I am sure my brother judges of the state courts will not think me wanting in courtesy if I hear them, as I am bound by law to do, and will believe me when I say there is no one who regrets more than myself this conflict of jurisdiction.

I think this proceeding in the supreme court was beyond the jurisdiction of that court. That the state board of canvassers were clothed, under the law, with discretionary powers, which required them to discriminate the votes, to determine and certify the candidates elected after scrutiny, and that they were a part of the executive depart-

ment of the government, and were in no wise subject to the control, as to what they should do after they had commenced to perform that duty, of the judicial department; and that as this was a general election, at which members of congress were to be elected, and electors of president and vice-president of the United States to be chosen, they were acting in a federal capacity, or, in other words, in pursuance of a law of the United States, and, therefore, if any one disturbs them in the exercise of their functions, they are entitled to the protection of the courts of the United States.

And while I greatly regret to differ from my brethren of the state court, I shall make an order discharging the parties from custody.

I am happy, however, to think that this controversy may be referred to a tribunal whose judgment we all respect,—the supreme court of the United States; and I shall be displeased as little as any one to hear that in this judgment I have been in error.

In the course of the preparation of these notes I have had to refer to the following authorities:

### Authorities.

The circuit court can look behind the return of the officer and the commitment and examine into the cause of the detention. Rev. St. U. S. § 753; U. S. v. Harris supra; Ex parte Bridges [Case No. 1,862]; opinion of Bradley, J., in same case [supra]; Ex parte Jenkins [Case No. 7,259]; Ex parte Mattison [Id. 9,296]; opinion of Bond, J., U. S. Cir. Ct. Dist. S. C.; Bigelow v. Forrest, 9 Wall. [76 U. S.] 339; Ex parte Lange, 18 Wall. [85 U. S.] 163; People v. Liscomb, 60 N. Y. 573.

The supreme court had no jurisdiction to control, by mandamus, the action of the board of state canvassers in matters within their discretion. Const. S. C. art. 4, § 4; Id. art. 1, §§ 26, 33; Gen. St. S. C. c. 8; Astrom v. Hammond [Case No. 596]; Elliott v. Piersol, 1 Pet. [26 U. S.] 328; People v. Liscomb, 60 N. Y. 560; Gaines v. Thompson, 7 Wall. [74 U. S.] 347; Secretary v. McGanahan, 9 Wall. [76 U. S.] 298; Mississippi v. Johnson, 4 Wall. [71 U. S.] 475; Attorney General v. Barstow, 4 Wis. 567; State v. Marlow, 15 Ohio, 114; Rice v. Austin, 19 Minn. 103 (Gil. 74). See, as to executive officers in South Carolina, Gen. St. c. 16, § 1.

Mandamus will not lie where there is any other remedy. People v. Cover, 50 Ill. 100; Bassett v. School Directors, 9 La. Ann. 513.

Board could not reassemble after adjournment sine die. Cooley, Const. Lim. 622; Clark v. Buchanan, 2 Minn. 346 (Gil. 298); 33 N. Y. 603.

Board cannot be punished for disobedience to a void order. Walton v. Develing, 61 Ill. 201; Dickey v. Reed [78 Ill. 261]; Ex parte Grace, 12 Iowa, 207. Board was acting under constitution and laws of the United States. Const. U. S. art. 1, § 2; Id. art. 2, § 1; Rev. St. U. S. §§ 5510, 5511; Hurd, Hab.

Corp. 412; Ex parte Kearney, 7 Wheat. [20 U. S.] 38; New Orleans v. Steamship Co., 20 Wall. [87 U. S.] 392; U. S. v. Johnson [Case No. 7,418]; Norris v. Newton [Id. 10,307]; Tarble's Case, 13 Wall. [80 U. S.] 407; Alleman v. Booth, 21 How. [62 U. S.] 523; Ex parte Cabrera [Case No. 2,278]; Ex parte Watkins, 3 Pet. [28 U. S.] 201.