## SENIOR and others *v.* PIERCE and others.

*(Circuit Court, S. D. Iowa. 1887.)*

1. FEDERAL AND STATE COURTS—CONFLICT OF JURISDICTION—PROPERTY UNDER SEIZURE.

Property in the possession of an officer of a state court under legal process is in the possession of that court, and by that reason within its exclusive jurisdiction; and the federal courts, by replevin or any other process, cannot disturb such possession.[1]

2. SAME—RIGHTS OF PARTIES—VALIDITY OF PROCEEDINGS.

And in questions not involving the constitution and laws of the United States, the jurisdiction of a state court, having first attached by seizure and custody of the property under process, remains inviolate from the interference of a federal court, irrespective of the rights of the parties of the validity of the proceedings.[1]

---

[1] Respecting conflict of jurisdiction between courts of co-ordinate jurisdiction, see Melvin v. Robinson, *post,* 634; Kohn v. Ryan, *post,* 636; Connor v. Hanover Ins. Co., 28 Fed. Rep. 553, and note; Domestic & Foreign Miss. Soc. v. Hinman, 13 Fed. Rep. 165, and note; Davis v. Life Association of America, 11 Fed. Rep. 781, and note.

**3. SAME—INTOXICATING LIQUORS—STATE OFFICER—REPLEVIN.**

    Therefore, where the jurisdiction of an Iowa state court had attached to certain liquors seized by an officer of that court, by virtue of process under the prohibitory liquor laws of that state, such officer cannot be by a federal court attached for contempt for refusing to obey the command of a writ of replevin issuing out of the federal court.

**4. SAME—STATE STATUTE.**

    Code Iowa, § 3225, which provides that in civil actions, under certain circumstances, replevin may be maintained for property in the possession of an officer holding it by legal process, being intended to be applied to courts acting under the same jurisdiction, would not warrant the taking by the federal courts of property within the jurisdiction of the state courts.

This cause is now before the court upon the application of the plaintiff to attach said Frank Pierce for contempt. The alleged contempt consists in the refusal of said Pierce to deliver to the United States marshal, in obedience to the command of a writ of replevin issued in said cause, certain spirituous liquors, valued at about $6,000, which said Pierce had seized under the Iowa liquor law. The property in question was seized by said Pierce by virtue of a warrant issued by a justice of the peace of Polk county. From the decision and judgment of the justice an appeal had been taken to the district court of Polk county, in which court the case is now pending. It is alleged that the liquors when seized were in the original packages in which they had been imported for a lawful purpose, and with no intent to evade the law of the state.

*C. C. Cole,* for plaintiff.

*Atty. Gen. Baker,* for defendants.

LOVE, J. We live under two separate and distinct governments. In this respect our situation is peculiar, since there is not, perhaps, under the sun, another people subject to the rule of more than one government. While neither of the governments over us is absolutely sovereign, each is clothed with certain sovereign powers, to be exercised within the limits of the fundamental law, and each is supreme within its proper sphere. One of the most difficult problems in our polity has always been to define the limits of our two governments and keep each in its true orbit. There are, in this dual system, two judicial organizations, for the most part quite independent of each other. With very few exceptions, there is no appeal from one of these jurisdictions to the other: They have no judicial power over each other; they cannot revise each other's judgments. There is no common superior to bring their decisions into harmony, and prevent conflict between them. In most cases, the courts of the two jurisdictions exercise concurrent judicial power. They are employed in administering justice, and in enforcing the same laws, within the same territorial limits, over the same persons and subject-matter. It is manifest that in so complex a judicial system there must arise, with respect to both persons and property, many causes of conflicting jurisdiction; and it were needless to dwell upon the intolerable mischiefs which must have resulted from such conflicts if they had not been averted by a wise and timely course of judicial decisions. The

danger of such conflicts has been from the first imminent; and yet the courts, state and federal, have for nearly a century exercised their judicial functions side by side, over the same people and territory, in cases mostly of concurrent jurisdiction, with but little discord, jarring, or conflict.

How has this most desirable harmony been attained? We owe it beyond doubt to the wisdom of the supreme court of the United States in planting deeply in our legal system the principle that where a court of either jurisdiction has, by legal process, custody of persons or property, the courts of the other jurisdiction shall not attempt to wrest such persons or property from the court first obtaining possession of the same. Again and again has this principle been laid down by the supreme court, as will be seen by the authorities cited below. That court has put its decision upon the ground that the possession of the officer of a court under legal process is the possession of the court, and that an attempt to wrest persons or property from the custody of the officer is an invasion of the jurisdiction of the court. See *Buck* v. *Colbath*, 3 Wall. 334, 341; *Hagan* v. *Lucas*, 10 Pet. 400; *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 450; *Ableman* v. *Booth*, 21 How. 506; *Ex parte Dorr*, 3 How. 104; *Peck* v. *Jenness*, 7 How. 624; *Slocum* v. *Mayberry*, 2 Wheat. 1; *Covell* v. *Heyman*, 111 U. S. 176, 4 Sup. Ct. Rep. 355. Nothing in the way of illustration or argument could be added to what is enforced in these cases. Particular attention may, however, be called to *Peck* v. *Jenness*, in which the doctrine is fully stated, and where the court, among other things, say:

"Neither can one court take property from the custody of the other, by *replevin or any other process;* for this would produce a conflict extremely embarrassing to the administration of justice."

This, moreover, was a case in which the right of the federal court to interfere with the previously attached jurisdiction of the state court was expressly denied and repudiated. *Freeman* v. *Howe* was the opposite, in this regard, of *Peck* v. *Jenness*. In *Freeman* v. *Howe* the power of the state court to invade the jurisdiction of the federal court was denied. That was originally an action of replevin, by which the state court of Massachusetts took from the United States marshal property which he had attached. The property attached by the marshal was taken from a party not named in the writ, and this party brought replevin in the Massachusetts court. The supreme court held that the action of the sheriff in taking the goods from the marshal was illegal and void. A very striking illustration of the principle of non-interference is found in the statement of Mr. Justice CAMPBELL, in delivering the opinion in *Taylor* v. *Carryl*, 20 How. 597. He says:

"The legislation of congress in organizing the judicial power of the United States exhibits much circumspection in avoiding occasions for placing the tribunals of the states and the Union in collision. A limited number of cases exists in which a party sued in a state court may obtain a transfer of the cause to a court of the United States, by an application to the state court in which it was commenced, and this court, in a few well-defined cases by the twenty-

fifth section of the act of 1789, may revise the judgment of the tribunal of last resort of a state. In all other respects the tribunals of the state and the Union are independent of one another. The courts of the United States cannot issue an injunction to stay proceedings in any court of a state, and the judiciary act provides that writs of *habeas corpus* shall in no case extend to prisoners in jail unless where they are in custody under and by color of the authority of the United States, or are committed for trial by some court of the same, or are necessary to be brought into court to testify."

And I may add that the federal law of *habeas corpus* remains to this day as stated by Mr. Justice CAMPBELL, except as it is extended by the act of 1867 (now section 753, Rev. St.) to prisoners "in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof, or in *violation* of the constitution or of a law or treaty of the United States," etc.

An apparent, though not real, exception to the rule as stated by Mr. Justice CAMPBELL, that the courts of the United States cannot in *any* case issue an injunction to stay proceedings in a state court, is to be found in removal causes which involve *rights of property as the subject-matter* of the litigation. In such cases the supreme court of the United States has, for obvious reasons, held that it is within the power of the federal court to preserve and protect the property by injunction against any attempt to sell it, or otherwise interfere with it, by the authority of the state court from which the cause has been removed. And a striking illustration of the strength of this principle of non-intervention is found in the reference by Mr. Justice CAMPBELL, in *Taylor* v. *Carryl*, to the observation of Chief Justice TANEY, in delivering his opinion, *Ex parte Dorr*, to the effect that "an individual who may be indicted for treason against the United States in the circuit court is beyond the power of the federal courts and judges, if he is in custody under the authority of a state." And Mr. Justice CAMPBELL adds that signal instances are reported in verification of this statement in *Ex parte Robinson*, 6 McLean, 355.

The more recent case of *Covell* v. *Heyman*, cited *supra*, is entirely conclusive of the questions now before the court. In that case the cases which preceded it were reviewed and explained in terms which leave no doubt whatever as to the rule which should be applied to the matter now at bar. *Covell* v. *Heyman* was an action by which the state court of Michigan took from the United States marshal certain personal property which it was alleged the marshal had wrongfully seized under a writ of execution issued upon a judgment of the circuit court of the United States for the Western district of Michigan. The supreme court review at length the case of *Freeman* v. *Howe*, and expressly sanction and approve the doctrine of that case, "that when property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued; that the possession of the officer cannot be disturbed by process from any state court, because to disturb that possession would be to invade the jurisdiction of the court by whose command it is held, etc.; and that, in order to avoid unseemly collision between

the two jurisdictions, this rule should be enforced without respect to the question of the respective rights of the parties to the property seized, and whether one was paramount to the other,—the sole question being, which jurisdiction had first attached by the seizure and custody of the property under process." And the court, at page 179, adds that "*vice versa,* the same principle protects possession of property while thus held by process issuing from state courts against any disturbance under process of the courts of the United States; excepting, of course, those cases wherein the latter exercise jurisdiction for the purpose of enforcing the supremacy of the constitution and laws of the United States." The court further holds that "it makes no difference, as to this question, whether the property has been seized by the officer under a writ directing him to take property specifically described in the writ, or under a writ directing a levy generally; the sole question being whether or not the property is in the prior possession of the court under color of legal process, in which latter case the prior possession cannot be disturbed, but any party claiming a superior and paramount right must assert his claim by ancillary proceedings in the court having possession of the property."

Again say the court: "The forbearance of the courts of the states, and of the United States, to interfere with their respective jurisdictions, is more than a matter of comity." "It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience." "These courts do not belong to the same system, and, although they co-exist in the same space, they are independent, and have no common superior; and, when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void." And, further, that the "exclusive authority of the court issuing the writ extends, not only to the decision of all questions affecting its jurisdiction, and the form and force of the writ itself, and the validity of the proceeding in issuing and executing it, but also of all questions affecting the identity of the person or property seized and held under color of its authority, and the right to exempt them from its operation." *Turble's Case,* 13 Wall. 397. "It does not avail, therefore," continues the court, "to say that, as the writ commands the officer to take the property of the defendant, he cannot, under that claim, take and hold the property of another, because the property which he does actually take he takes and holds as the property of the defendant claiming it to be such, and therefore he has it in his possession under color of process and claim of right." "It is the bare fact of that possession under claim and color of that authority, without respect to the ultimate right to be asserted otherwise and elsewhere, that furnishes the officer complete immunity from the process of every other jurisdiction that attempts to dispossess him."

Since, then, property in the hands of an officer of a court under legal process is to be considered as in the custody of the court, the officer would clearly have no right to surrender it without the order of the court, to whom he owes obedience; and therefore an attempt of an officer of an

alien jurisdiction to take the property out of the possession of the officer holding it must, inevitably, either prove futile or lead to a forcible collision. Would the officer in possession be justified in surrendering the property at the mandate of a court foreign to him, and without any power whatever to give him protection against the orders of his own court? Would it not be his duty to resist by force the attempt of an officer of a different jurisdiction to take the property from his custody? Can the officer in possession be required to determine for himself, in advance of the judgment of his own court, and of the court from which the writ of replevin issues, the right of the plaintiff suing out a replevin from an alien jurisdiction to the property in dispute, and the authority of the officer serving the writ of replevin to seize and take the property? And can an officer be adjudged to be in contempt, and punished for his disobedience to the process of an alien jurisdiction, while acting in obedience to the command of his own court, in refusing to deliver up property which he holds as the mere custodian of that court?

The state and federal courts of original jurisdiction are independent of each other. They are equal in power and dignity. The courts of one jurisdiction have no authority or right whatever to command or coerce the courts of the other jurisdiction. How, then, could the federal court take property from the custody of the state court, against its consent, without the use of actual force? But, if one jurisdiction may use force, why not the other? Why, if the federal court may exert force to take property from the possession of a state court, may not the latter, in its turn, wrest property from the federal court by the same means? Nothing is more evident than that whatever a federal court may lawfully do to take property from the state court the latter may also, in like circumstances, do to withdraw property from the possession of a federal court. This power, if it exists, must be reciprocal. It cannot, in the nature of things, be one-sided and exclusive in the federal courts. It would be most unreasonable for the federal courts to assert and exercise a power of seizing property in the custody of a state court, and deny to state courts of co-equal power authority to interfere in like manner with the possession of property held by a federal court. The federal tribunals would therefore, but for the principle of mutual non-interference, be exposed to an invasion of their jurisdiction by the state courts, which they are certainly neither ready nor willing to permit. The evil consequences flowing from the interference of the two jurisdictions with their respective rights of possession would by no means end with the scenes of violent collision which must inevitably occur. The taking of the possession of the property by one court from another would not in the slightest degree affect the jurisdiction of the latter to hear and determine the controversy between the parties. The invaded court could not be prevented from proceeding to judgment upon the subject-matter of the suit. Hence would inevitably arise divers and conflicting judgments by two courts of concurrent jurisdiction upon the same controversy, and property, within the same territorial limits, without any common superior tribunal to settle and adjust the conflicting rights and titles thus created. Thus, by

the judgment of a court of one jurisdiction, the right of property might be established in one suitor, while, by the decision of a court of the other jurisdiction, the title might be adjudged to his adversary; and the right of either party would be made to depend upon the forum in which it should happen to be challenged.

It has been argued that the proceedings before the magistrate who issued the warrant of seizure were irregular; that, in order to give him jurisdiction, the statute should have been strictly pursued, and that consequently the custody of the state officer is without jurisdiction, and void. Conceding all this, we are at a loss to see how the question before us is thus materially affected; for it is nevertheless true that the property in question is in possession of the state court under color of legal process. The case was appealed from the judgment of the justice of the peace to the state district court, and the property is now, therefore, in the custody of that court. How is this court to obtain possession of it without the consent of the state district court, unless by a resort to force to wrest it from the custody of the officer of that court? Suppose we decide that the proceeding was irregular, and the seizure without warrant of law, and void. and suppose the state court shall hold just the contrary, how is the conflict of judgment between us to be settled? And, if one court or the other shall not yield, how is a collision of force to be avoided? Why should the state court, which first got possession of the property and the controversy, yield to the claim of jurisdiction by this court? By what right, law, or authority, can this court claim superiority to the state court, or any paramount competency, to hear and determine the matter at issue?

Inasmuch as the very purpose of non-interference is to prevent a conflict between the two jurisdictions, I can see no difference in the application of the principle whether the question to be decided by the two courts is one of jurisdiction, or of mere property right, the jurisdiction being conceded. The state court must needs decide for itself whether or not the seizure proceeding was illegal. There is no other tribunal with competent authority to decide this question for the state court. If the federal court may decide the question of the regularity of the seizure and jurisdiction adversely to the state court, and proceed to take the property from its custody by force, why may not the state court reciprocally, in any parallel case, decide the same questions when property is in our custody, and proceed by a writ of replevin to dispossess the marshal? But assuredly, if the federal court were in possession by legal process, it would not permit the state court to decide the question of jurisdiction, and wrest the property from our control. The only safe and legitimate course for the suitor is to pursue his remedy by some proper ancillary proceeding in the court first obtaining jurisdiction, and take his appeal, if not satisfied, to the final justice,—of the supreme court of the state, or of the United States, as the case may require. It will not do for the suitor to assume that he cannot obtain justice in one jurisdiction or the other. But at all events, it is infinitely better that injustice should be done and suffered in particular cases than that a course of proceeding

should be sustained fraught with all the evils of conflicting judgments and forcible collisions between the two independent jurisdictions.

Supposing the allegation that the liquors were in the original packages to be sufficient, if true, to maintain the plaintiff's action of replevin, how can it affect the respondent to this motion to show cause why he should not be attached for contempt? It is not alleged that he knew that the liquors were in the original packages in which they were imported, and held for a lawful purpose, when he seized them, and the writ of replevin when served upon him gave him no notice of that fact. Before he could be in contempt of the process of this court by reason of his refusal, under the circumstances, to deliver the goods to the marshal, it was certainly necessary to bring home to him knowledge that the goods were of such a character as not to be subject to seizure under the prohibition law.

Again, it is contended by counsel that "the Iowa statute has repealed the common-law and well-established rule that property in possession of a court or an officer could not be replevied," etc., citing Code, § 3225. It was undoubtedly well settled at common law, even with respect to courts sitting under the same general jurisdiction, that the custody of property by one court under legal process could not be disturbed by the authority of any other court of concurrent judicial power. See *Payne* v. *Drewe*, 4 East. 523; *Evelyn* v. *Lewis*, 3 Hare, 472; *Noe* v. *Gibson*, 7 Paige, 513. This principle has been modified by the legislation of Iowa with respect to civil actions in its own courts. The Code of Iowa, § 3225, provides that the action of replevin may be under certain circumstances maintained for property in the possession of an officer holding it by legal process. The supreme court of Iowa has, however, decided that, "where proceedings are in process under the prohibitory liquor law, the liquors are not subject to the action of replevin." *Funk* v. *Israel*, 5 Iowa, 438; *Fries* v. *Porch*, 49 Iowa, 351. The court held in these cases that the "liquors were in the custody of the law by virtue of a process in a criminal proceeding;" that "to suffer a party in an action of replevin to take the property out of the hands of the officer seizing them would be an interference with the administration of justice in criminal proceedings, and would defeat the whole object and intention of the prohibitory liquor law."

These decisions would be absolutely conclusive against the action of replevin in the present cause, but for the allegation in the petition that "the liquors when seized were in the original packages in which they were imported into the state, with lawful intent, and with no purpose to avoid the prohibitory laws of Iowa," etc. See *Fries* v. *Porch*, 49 Iowa, 356. We are, however, satisfied that the replevin statute of Iowa cannot be applied to the conditions which exist between two separate and independent jurisdictions like the state and federal courts. The statute was not framed nor intended for any such purpose. It was intended to be applied to courts acting under the same jurisdiction, and through the same executive officers. Between such courts and officers there can be no serious danger of unseemly or forcible collision. The

state courts of original jurisdiction act under a common government. Their judgments are subject to revision by a superior tribunal, common to them all. By this common superior their conflicting decisions and incongruous rulings may be brought into harmony. Their executive officer, the sheriff, is generally subject to their own control. Hence, when they issue a replevin to take property from his possession, there is no danger of a conflict of force. All these essential conditions are absolutely wanting in the relations of federal and state courts of original jurisdiction. They have no common superior to revise their decisions, and bring them into harmony. They derive their authority and jurisdictions from different governments. They exercise judicial power wholly independent of each other. Their executive officers are not the same. The federal court can in nowise control the sheriff; the state court is equally powerless to control the marshal. There is therefore no means whatever at the command of either court to prevent collisions between them. Where a court under one of these jurisdictions holds property *in custodia legis,* conflicts of both decision and force can be averted only by abstinence from all interference by the courts of the other jurisdiction. Hence we say that the state statute of replevin cannot be safely applied, as it certainly never was intended to be applied, to the taking of property by either of these courts from the custody of the other.

But suppose we take the contrary view, and hold that the state statute is to be enforced as the law of this court, then surely it may be applied reciprocally by the state and federal courts. We cannot, assuredly, recognize the state statute only partially in aid of our own power to wrest property from the state courts by the writ of replevin, and at the same time to deny the state courts the same use of that process in withdrawing property from our own custody. And we are certainly not prepared to concede that any and every state court of original jurisdiction may, at its discretion, by means of the writ of replevin under the statute law, wrest from the custody of this court property held by us in the hands of the marshal.

It is provided in section 914, Rev. St. U. S., that the practice, pleadings, and forms and modes of proceeding in civil causes at common law in the federal courts "shall conform, *as near as may be,*" to the practice, pleadings, and forms and modes of proceeding in the state courts; and it may perhaps be conceded that the process of replevin as provided by the state statute may be applied, "as near as may be," in our own practice; that is to say, a suitor may, when his property has been wrongfully seized by the marshal, sue out a writ of replevin from the United States circuit court according to the provisions of the state law to obtain possession of his property, just as a suitor in a state court may use the same process to obtain possession of his property wrongfully seized by the sheriff.

But, for the conclusive reasons already presented, we cannot give to this statute an application which would precipitate fatal conflicts between the courts of the two jurisdictions, and this in contravention of

the manifest policy and reason of a long course of decisions by the supreme court of the United States, intended to prevent that very result.

BREWER and SHIRAS, JJ., concur.