STATE OF WEST VIRGINIA v. LAING et al.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1904.)

No. 528.

**1. FEDERAL COURTS—HABEAS CORPUS—JURISDICTION.**

Rev. St. § 753 [U. S. Comp. St. 1901, p. 592], confers on a Circuit Court of the United States jurisdiction to issue a writ of habeas corpus to bring before it a person imprisoned by a state for an act alleged in his petition to have been done in the lawful execution of a writ issued by said court, and to discharge him if it be found that such allegation is true.

**2. SAME—PERSONS IMPRISONED FOR ACT DONE PURSUANT TO LAWS OF UNITED STATES.**

Petitioners were called upon to act as members of a posse comitatus to assist in the arrest of a man indicted in a federal court for resisting its officers. He was a dangerous and desperate man, and had declared that he would not be taken alive, as petitioners knew, and they also knew that he had been an active member of an armed mob which had previously resisted the officers and prevented their service of a process of the court. They were ordered to go toward his house from the rear while the officers approached it in front. Seeing the officers coming, he ran out at the rear with a pistol in his hand, and toward petitioners, who twice ordered him to halt, but he kept on until quite close, when, seeing him turn toward a large tree, and believing that he intended to shelter himself behind it and open fire on them, they both fired at him and killed him. *Held*, that what they did was done in the lawful discharge of a duty imposed on them by the laws of the United States and was justified; that they were not subject to prosecution therefor by the state; and that on their arrest and imprisonment on a charge of murder they were properly discharged on a writ of habeas corpus by the federal court.

Appeal from the Circuit Court of the United States for the Southern District of West Virginia. Habeas Corpus.

John H. Holt, S. C. Burdett (Romeo H. Freer and T. J. McGinnis, on the brief), for the State.

J. W. St. Clair, W. R. Thompson (C. W. Dillon, W. H. McGinnis on the brief), for appellees.

Before GOFF, Circuit Judge, and MORRIS and PURNELL, District Judges.

GOFF, Circuit Judge. This case is here from the Circuit Court of the United States for the Southern District of West Virginia, the appellant insisting that there is error in the order of that court entered on the 11th day of December, 1903, discharging from arrest and imprisonment the appellees, John D. Laing and Stewart Hurt. From the petitions filed in their behalf, praying for the writs of habeas corpus, the returns thereto, and the exhibits filed therewith, it appears that at the March term, 1903, of the Circuit Court for said district, one John Harless was indicted, charged with a violation of section 5398 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3655], in that he had resisted certain officers of the United States while they were engaged in the discharge of their official duties; that a capias for his arrest had been duly issued from said court and regularly placed in the hands of

Daniel W. Cunningham and Walter C. Summers, deputy United States marshals for that district; that said officers proceeded to the county of Raleigh, in said district, where Harless resided, for the purpose of arresting him, and that to assist them in executing the process mentioned they summoned Quincy George, John D. Laing, and Stewart Hurt, citizens residing in that locality, as a posse comitatus; that on April 21, 1903, the said five mentioned parties, with the capias in the hands of the officers mentioned, proceeded to the house in the county of Raleigh where Harless resided, for the purpose of arresting him; that the appellees were directed by the officers to approach from the rear the house in which Harless was then supposed to be, the said marshals and the remaining member of the posse proceeding so as to reach it at the front thereof; that Harless, observing the coming of the officers, left the house by the rear door, and ran in the direction of the appellees, carrying in his hand a pistol, and that when he was about 90 yards from them, they, seeing him so advancing and so carrying the pistol, called to him to halt, which he did not do, but continued to approach until he was within close pistol range of them, when they again commanded him to stop and surrender, but he, refusing to do so, turned towards a large tree which was a short distance from him, when the appellees, believing that he was seeking shelter of the tree from which to fire on them, near the same moment both of them fired at him, one of the shots passing through his body near the heart, producing death; that the appellees were soon thereafter arrested by a constable of Raleigh county, on a warrant charging them with feloniously shooting and murdering the said Harless, and that they were on the 28th day of April, 1903, indicted by the grand jury of that county for feloniously killing him; that they were committed to the jail in said county to await trial on such charge, and that while so confined writs of habeas corpus were at their instance sued out, requiring the sheriff of that county to produce the appellees before the Circuit Court of the United States for the Southern District of West Virginia, in order that the cause of their imprisonment and detention might be inquired into, they claiming that in the shooting and killing of Harless, under the circumstances mentioned, they had violated no law of the state of West Virginia, but had, on the contrary, lawfully discharged their duties as members of the posse comitatus referred to.

After due return had been made to the writs of habeas corpus, and after the petitioners had been brought before it by said sheriff, the court below, with the consent of the parties, ordered that the questions raised by the two petitions should, as they both related to the same transaction, be heard together. The petitioners then offered the testimony of 12 witnesses in their behalf, and 13 witnesses were examined in behalf of the respondent; certain documentary evidence, including the transcripts of the proceedings in the circuit court of Raleigh county, and in the Circuit Court for the Southern District of West Virginia, relating to said matter, were also offered in evidence, and the argument of counsel fully heard; after which the judge presiding entered an order discharging the

petitioners, when the state of West Virginia prayed a review by this court of the proceedings so had in the court below.

The points involved in the assignments of error may be stated as follows: First, had the Circuit Court of the United States for the Southern District of West Virginia jurisdiction of said petitions? Second, were the petitions so drawn as to authorize the court below to issue the writs of habeas corpus asked for? Third, did the facts alleged and substantiated by the testimony show that the petitioners were justified in killing Harless?

That the court below had jurisdiction and was authorized to issue the writs is shown by section 753 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 592], which expressly permits that court to issue the writ of habeas corpus in such cases, and to discharge the petitioners, if it be found that they are imprisoned, on account of acts which they were empowered to do under the laws of the United States. Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55; In re Burrus, 136 U. S. 586, 10 Sup. Ct. 850, 34 L. Ed. 1500; Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; Virginia v. Paul, 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386; In re Quarles and Butler, 158 U. S. 532, 15 Sup. Ct. 959, 39 L. Ed. 1080; Storti v. Massachusetts, 183 U. S. 138, 22 Sup. Ct. 72, 46 L. Ed. 120.

The motions to quash were properly overruled, for the petitions presented such cases as required the court to make inquiry concerning the detention and imprisonment of the petitioners. On such motions the allegations of the petition will be taken as true, and where they charge, as these petitions do, that the petitioners were duly summoned to aid in the execution of a writ of capias, which had been regularly issued by a court of the United States, and that their imprisonment is because of an act done by them in the lawful discharge of such duty, then, in obedience to the requirements of the statute mentioned, the court should at once issue the writ of habeas corpus, and, if on the hearing the proof offered sustains such allegations, should promptly discharge the parties so imprisoned.

The disposition of the remaining point raised by the assignments of error requires the careful analysis of all the testimony offered on the hearing below. The circumstances causing the effort to arrest Harless were unusual, the incidents connected with it unfortunate, and the result greatly to be deplored. From the evidence we are to determine whether or not the appellees were honestly endeavoring to lawfully execute the writ issued by the court below, and whether or not, the circumstances attending such endeavor on their part authorized them to act as they did. The record shows that at the time Harless was killed he was under indictment, charged with resisting the officers of the United States in the discharge of their duties; that he was aware of the pendency of such indictment, and knew that the deputy marshals had in their hands a capias for his arrest; that he had publicly stated on several occasions, concerning which the appellees had been informed, that he did not intend to be arrested, and that he would not be taken alive; that he had theretofore resisted arrest, and that he was taking a

prominent part in the strike then prevailing throughout the entire New River coal field; that an injunction had been sued out by certain coal operators in that section against a number of persons participating in the strike, and that the orders of the court in which such suit was pending—the court below—had been openly and persistently disregarded and violated; that because of such violation rules had been issued by that court against the parties charged therewith, and that said Deputy Marshal Cunningham had been sent to that locality to execute them; that he found the parties against whom he had such rules organized and determined to resist him, and that to enable him to serve the process in his hands he summoned assistance, among others the appellees, Laing and Hurt, but that, nevertheless, the attempt to serve the rules mentioned failed, because of the resistance of an armed mob, of which Harless was a member, he being armed and prominent in such resistance, seen and recognized by the appellees; that this mob thus resisting the arrest of a number of its members, and defying the officers of the law, marched through the locality where said strike was prevailing, destroying the property of certain citizens and terrorizing the community; that said marshal so resisted summoned a posse comitatus of about 200 men, with the assistance of which he again attempted to serve the process in his hands, such attempt resulting in a conflict with the mob, in which a number of men were killed and wounded; that in the fight Harless, an armed member of said mob, took an active part in such resistance, and that while so engaged was seen and recognized by the marshal as well as by the appellees; that soon thereafter the appellees were again summoned to assist in arresting Harless, and that they then took the place assigned them, as before described, in the rear of the Harless house.

We do not find it necessary to discuss the distinction existing between felonies and misdemeanors, nor the common-law rules applicable to the justification of officers, when endeavoring to arrest parties charged with such offenses, respectively. Those questions raised by counsel for appellant, important and interesting as they are, are not involved in this case as we see it, nor are the propositions of law relating to them applicable to the facts here found.

The appellees were, as members of said posse, discharging an important duty imposed upon them by the law—a duty they did not seek, but one they were ordered to perform. There was no feeling of animosity on their part towards Harless, and no motive existed because of which either of them would have been induced to do him harm. Did they act unlawfully, or were they justified in what they did? They were on a perilous mission, a fact at the time well known to them. Harless was a dangerous and desperate character, and this also they were well aware of. As the appellees understood the situation, Harless, in his endeavor to escape from the officers who were approaching the house, was coming directly towards them in a threatening manner, with pistol in his hand, refusing to halt, when ordered by them to do so, not only resisting arrest, but evidently intending bodily harm to those endeavoring to arrest him. Commanded the second time to halt and surrender, he

again refused, continuing to approach the appellees with pistol in hand, and when quite near them turned to the shelter of a tree, from which they had every reason to believe it was his intention to open fire on them. They were not only being resisted by the party they were lawfully endeavoring to arrest, but their lives were placed in jeopardy by him. They were compelled to act at once, for there was then no time for delay nor chance for further parleying. They were either to retreat, taking the risk of his shot, or were to continue the effort to arrest him, even if such endeavor cost Harless his life. What they did do was what reasonable men under like circumstances will always do. They acted under the responsibility of great power, which for that occasion was theirs, and they did not abuse it nor did they betray it. They acted under the fearful excitement incident to great danger, and their conduct receives the approval of our judicial judgment.

The appellees were, at the time Harless was killed, representing the government of the United States in enforcing the orders of its court. It was the duty of that government to see that such orders were respected, as it is also its duty, as well as the duty of that court, to see that the appellees, who have properly discharged the obligations that had been imposed upon them by the laws of the United States, are protected from arrest and punishment by any other authority whatsoever. It is because of this that the insistence of counsel for appellant that the appellees should have been remanded for trial by the state court is without merit. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; Wildenhus's Case, 120 U. S. 1, 7 Sup. Ct. 385, 30 L. Ed. 565; Botiller v. Dominguez, 130 U. S. 238, 9 Sup. Ct. 525, 32 L. Ed. 926; Ex parte Bridges, 2 Woods, 428, Fed. Cas. No. 1,862; Ex parte McCardle, 6 Wall. 318, 18 L. Ed. 816; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Ex parte Jenkins et al., 2 Wall, Jr., 521, Fed. Cas. No. 7,259; Ex parte Robinson, 6 McLean, 355, Fed. Cas. No. 11,935; Roberts v. Jailer of Fayette County, 2 Abb. 265, Fed. Cas. No. 15,463; In re Neill, 8 Blatchf. 156, Fed. Cas. No. 10,089; Electoral College of South Carolina, 1 Hughes, 571, Fed. Cas. No. 4,336.

If the appellees properly discharged their duties as members of the posse comitatus, as we find that they did, then they were not guilty of any crime against the state of West Virginia, for surely the performance of a duty to the United States cannot be a wrong to the state. A state court has not the right to arrest, convict, and punish an officer of the United States for an act lawfully done by him in the discharge of his official duties. If such court has that right, then the federal government is without the power necessary for its own protection.

Appellant's contention that a jury and not the court below should have passed upon the evidence is not sustained by the law, for the Congress certainly intended, in cases of this character, that the judges of the United States should hear the evidence, and without a jury proceed in a summary way to pass upon the federal question involved; that question being, is the petitioner deprived of his liberty in contravention of the Constitution or laws of the United

States? The statute also directs that if the judge shall find that the allegations of the petition are sustained, he shall forthwith discharge the petitioner and set him at liberty.

We would have in our midst an anomalous condition of affairs if the courts of a state could arrest and punish the officers of the federal government for acts done by them when they were lawfully discharging their duties under the laws of the United States. The right to arrest and punish them would carry with it the power to prevent them from discharging their duties. Such right does not exist, for the government of the United States, under its Constitution, possesses all the power necessary to its existence as an independent nation. As a nation it is absolutely sovereign over every foot of soil, and over every person found within the limits of its territory, and this sovereignty gives it the power to make and execute its own laws, in its own way and in its own tribunals.

There is no error in the judgment complained of. Affirmed.