### EX PARTE McCARDLE.

#### (MOTION.)

Under the act of February 5th, 1867 (14 Stat. at Large, 385), to amend the Judiciary Act of 1789, an appeal lies to this court on judgments in *habeas corpus* cases rendered by Circuit Courts in the exercise of original jurisdiction.

MOTION to dismiss an appeal from the Circuit Court for the District of Mississippi; the case being thus:

---

The Judiciary Act of 1789,* enacts:

"That either of the justices of the Supreme Court as well as judges of the District Courts, shall have power to grant writs of *habeas corpus*, for the purpose of an inquiry into the cause of commitment; *Provided*, That writs of *habeas corpus*, shall in no case extend to prisoners in jail, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify."

A subsequent act, one of February 5th, 1867,† to amend the Judiciary Act of 1789, enacts:

"Sec. 1. That the several courts of the United States, and the several justices and judges of such courts, within their respective jurisdiction, *in addition to the authority already conferred by law*, shall have power to grant writs of *habeas corpus* in all cases where any person may be restrained of his or her liberty in violation of the Constitution, or of any treaty or law of the United States."

After providing for the awarding, direction, serving and return of the writ, and for the hearing, &c., the act proceeds:

"From the final decision of any judge, justice, or court *inferior to the Circuit Court*, appeal may be taken *to the Circuit Court* of the United States for the district in which said cause is heard, and *from the judgment of said Circuit Court to the Supreme Court of the United States.*"

"And pending such proceedings or appeal, and until final judgment be rendered therein, and after final judgment of discharge in the same, any proceeding against such person so alleged to be restrained of his or her liberty in any *State* court, or under the authority of any *State*, for any matter or thing so heard and determined, or in process of being heard and determined, under and by virtue of such writ of *habeas corpus*, shall be deemed null and void."

---

* § 14; 1 Stat. at Large, 82.                    † 14 Id. 385.

The act further declares:

" SEC. 2. . . . . This act shall not apply to any person who is or may be held in the custody of the military authorities of the United States, charged with any military offence."

In this state of statutory law, a writ of *habeas corpus* was issued from the Circuit Court of the United States for the District of Mississippi, on the 12th of November, 1867, upon the petition of William H. McCardle, directed to Alvin C. Gillem and E. O. C. Ord, requiring them to produce the body of the petitioner, together with the cause of his imprisonment, and to abide the order of the court in respect to the legality of such imprisonment.

At the time of issuing the writ, E. O. C. Ord was brevet Major-General commanding the Fourth Military District, and Alvin C. Gillem was brevet Major-General commanding the sub-district of Mississippi, under the Reconstruction Acts of Congress.

In obedience to the writ, Major-General Gillem, on the 21st of November, made a return of the cause of imprisonment, from which it appeared that McCardle had been arrested, and was held in custody for trial by a military commission, under the alleged authority of the Reconstruction Acts, for charges, (1) of disturbance of the public peace; (2) of inciting to insurrection, disorder, and violence; (3) of libel; and (4) of impeding reconstruction.

On making this return Major-General Gillem surrendered McCardle to the court, and he was ordered into the custody of the marshal.

Subsequently, on the 25th of November, 1867, the Circuit Court adjudged that the petitioner be remanded to the custody of Major-General Gillem, from which judgment the petitioner prayed an appeal to this court, which was allowed, and a bond for costs given according to the order of the court.

On the same 25th of November, on the motion of the petitioner, he was admitted to bail on his own recognizance, with sufficient sureties, in the sum of one thousand dollars,

conditioned for his appearance to abide by and perform the final judgment of this court.

The legal consequence of this admission to bail was the discharge of the prisoner, both from the custody of the marshal and of Major-General Gillem, with a continuing liability, however, under the recognizance, to be returned, first to the civil court, and then to military custody, in case of affirmance by this court of the judgment of the Circuit Court.

The ground assigned for the motion to dismiss the appeal was a want of jurisdiction in this court to take cognizance of it.

*Mr. Trumbull (with whom was Mr. Hughes), in support of the motion:*

1. Unless Congress have given appellate jurisdiction to this court, it will be conceded that none can exist.* Under the Judiciary Act of 1789 assuredly no appeal lies, for none was given then or since.† Until now, eighty years since the government was formed, no such thing as an *appeal* or writ of error in a case like this has been known.

To determine whether the appeal lies, it is first necessary to ascertain whether the Circuit Court of Mississippi took jurisdiction of the case under the act of 1789, or 1867; if under the former, then, as we have said, and as will be admitted, no appeal lies.

Under the act of 1789, power was given to issue writs of *habeas corpus* for the relief of persons in custody " under or by color of the authority of the United States." McCardle was in prison exactly under such authority. Here, then, is a case coming within the very terms of the act of 1789, authorizing the issuing of the writ of *habeas corpus*, and not excepted from its provisions by the proviso. Had the act of February 5th, 1867, never been passed, the Circuit Court of Mississippi had authority to issue the writ of *habeas corpus* in this case.

---

* Wiscart *v.* Dauchy, 3 Dallas, 321; Ex parte Kearney, 7 Wheaton, 38.
† In the matter of Metzger, 5 Howard, 188.

On the other hand the act of 1867 does not properly apply to this case. What was the purpose of that act? We all know. It is matter of legislative, nay, of public history. It was to relieve persons from a deprivation of their liberty under State laws; to protect loyal men in the rebel States from oppression under color of State laws administered by rebel officers; to protect especially those who had formerly been slaves, and who, under color of vagrant and apprentice laws in some of the States, were being reduced to a bondage more intolerable than that from which they had been recently delivered. It was to protect such persons and for such a purpose that the law of 1867 was passed, and not to relieve any one from imprisonment under laws of the United States, a matter which had already been provided for by the act of 1789.

This is apparent from the terms of the act of 1867 itself. Observe the opening part of its first section. The sole object, as declared, is to confer *additional authority* on the United States courts and judges to issue writs of *habeas corpus;* and it would be absurd to say that a grant to the courts of what they already possessed was giving them something additional.

The concluding part of the same section is equally expressive. It is all aimed at *State* action.

2. That the Circuit Court of Mississippi had no jurisdiction of this case under the act of February 5th, 1867, is further apparent from the second paragraph of the act.

That McCardle was in the custody of the military authorities of the United States his petition admits, and the record shows that he was charged with disturbance of the public peace, with inciting insurrection, disorder, and violence, in violation of the laws of Congress, known as the Reconstruction Acts.

The State of Mississippi, where McCardle was arrested, was at the time under military control; General Ord was, as appears by the record, in *command* of the military district embracing Mississippi, and McCardle was arrested by him, charged with being a disturber of the public peace, and with inciting " insurrection, disorder, and violence," which was

clearly a military offence. If so, this court has no jurisdiction of this case, because it gets its jurisdiction, if at all, by appeal under the act of February 5th, 1867, and that act expressly exempts from its operation persons in the custody of the military authority charged with a military offence.

3. But if it were admitted that the Circuit Court properly took jurisdiction of this case under the act of February 5th, 1867, still no appeal from its decision would be to this court, for the reason that it was an original proceeding in the Circuit Court, and no appeal is given in such cases. The jurisdiction exists only when an appeal comes from the Circuit Court, itself acting as an appellate court, and from the decision of any judge, justice, or court, "*inferior*" to it.

The language of the statute is plain. Of course, this being an original case in the Circuit Court, and not one taken to that court by appeal from an inferior tribunal, is not within the statute. A rule for appeals "being provided, this court cannot depart from it."

*Messrs. Black and Sharkey, contra,* contended that the statute of 1867 was a remedial one, and should therefore receive a liberal construction; that the clause which gave an appeal from the District Court to the Circuit Court, and from the Circuit Court to the Supreme Court of the United States, did not intend to confine the appeal to the Supreme Court to cases which merely commenced in the District Court, but to give the appeal to cases which commenced originally in the District or Circuit Court; that the language of the opening part of the first section was most comprehensive; that there was no reason for Congress to make the distinction between the two cases. The exception in the second section, as to persons charged with military offences, did not apply to the case, for no military offence was charged against the party. The offences charged were all civil offences. By putting the district under military rule they did not become military offences any more than they would have been ecclesiastical offences if the same district had been put under the government of a body of clergy. The

offences had a specific well-known nature; and so tested, they were civil offences.

The CHIEF JUSTICE delivered the opinion of the court.

The motion to dismiss the appeal has been thoroughly argued, and we are now to dispose of it.

The ground assigned for the motion is want of jurisdiction, in this court, of appeals from the judgments of inferior courts in cases of *habeas corpus.*

Whether this objection is sound or otherwise depends upon the construction of the act of 1867.

Prior to the passage of that act this court exercised appellate jurisdiction over the action of inferior courts by *habeas corpus.* In the case of *Burford* * this court, by *habeas corpus,* aided by a writ of *certiorari,* reviewed and reversed the judgment of the Circuit Court of the District of Columbia. In that case a prisoner brought before the Circuit Court by the writ had been remanded, but was discharged upon the *habeas corpus* issued out of this court.

By the writ of *habeas corpus* also, aided by a *certiorari,* this court, in the case of *Bollman and Swartwout,*† again revised a commitment of the Circuit Court of the District. The prisoners had been committed on a charge of treason by order of the Circuit Court, and on their petition this court issued the two writs, and, the prisoners having been produced, it was ordered that they should be discharged on the ground that the commitment of the Circuit Court was not warranted in law.

But, though the exercise of appellate jurisdiction over judgments of inferior tribunals was not unknown to the practice of this court before the act of 1867, it was attended by some inconvenience and embarrassment. It was necessary to use the writ of *certiorari* in addition to the writ of *habeas corpus,* and there was no regulated and established practice for the guidance of parties invoking the jurisdiction.

---

* 3 Cranch, 44ⁿ, 453.  See also Ex parte Dugan, 2 Wallace, 134.

† 4 Cranch, 75.

This inconvenience and embarrassment was remedied in a small class of cases arising from commitments for acts done or omitted under alleged authority of foreign governments, by the act of August 29th, 1842,* which authorized a direct appeal from any judgment upon *habeas corpus* of a justice of this court or judge of a District Court to the Circuit Court of the proper district, and from the judgment of the Circuit Court to this court.

· This provision for appeal was transferred, with some modification, from the act of 1842 to the act of 1867; and the first question we are to consider, upon the construction of that act, is whether this right of appeal extends to all cases of *habeas corpus*, or only to a particular class.

It was insisted on argument that appeals to this court are given by the act only from the judgments of the Circuit Court rendered upon appeals to that court from decisions of a single judge, or of a District Court.

The words of the act are these: " From the final decision of any judge, justice, or court inferior to the Circuit Court, an appeal may be taken to the Circuit Courts of the United States for the district in which said cause is heard, and from the judgment of said Circuit Court to the Supreme Court of the United States."

These words, considered without reference to the other provisions of the act, are not unsusceptible of the construction put upon them at the bar; but that construction can hardly be reconciled with other parts of the act.

The first section gives to the several courts of the United States, and the several justices and judges of such courts within their respective jurisdictions, in addition to the authority already conferred by law, power to grant writs of *habeas corpus* in all cases where any person may be restrained of liberty in violation of the Constitution, or of any treaty or law of the United States.

This legislation is of the most comprehensive character. It brings within the *habeas corpus* jurisdiction of every court

---

* 5 Stat. at Large, 539.

and of every judge every possible case of privation of liberty contrary to the National Constitution, treaties, or laws. It is impossible to widen this jurisdiction.

And it is to this jurisdiction that the system of appeals is applied. From decisions of a judge or of a District Court appeals lie to the Circuit Court, and from the judgment of the Circuit Court to this court. But each Circuit Court, as well as each District Court, and each judge, may exercise the original jurisdiction; and no satisfactory reason can be assigned for giving appeals to this court from the judgments of the Circuit Court rendered on appeal, and not giving like appeals from judgments of Circuit Courts rendered in the exercise of original jurisdiction. If any class of cases was to be excluded from the right of appeal, the exclusion would naturally apply to cases brought into the Circuit Court by appeal rather than to cases originating there. In the former description of cases the petitioner for the writ, without appeal to this court, would have the advantage of at least two hearings, while in the latter, upon the hypothesis of no appeal, the petitioner could have but one.

These considerations seem to require the construction that the right of appeal attaches equally to all judgments of the Circuit Court, unless there be something in the clause defining the appellate jurisdiction which demands the restricted interpretation. The mere words of that clause may admit either, but the spirit and purpose of the law can only be satisfied by the former.

We entertain no doubt, therefore, that an appeal lies to this court from the judgment of the Circuit Court in the case before us.

Another objection to the jurisdiction of this court on appeal was drawn from the clause of the first section, which declares that the jurisdiction defined by it is "in addition to the authority already conferred by law."

This objection seems to be an objection to the jurisdiction of the Circuit Court over the cause rather than to the jurisdiction of this court on appeal.

The latter jurisdiction, as has just been shown, is coexten-

sive with the former.    Every question of substance which the Circuit Court could decide upon the return of the *habeas corpus,* including the question of its own jurisdiction, may be revised here on appeal from its final judgment.

But an inquiry on this motion into the jurisdiction of the Circuit Court would be premature.    It would extend to the merits of the cause in that court; while the question before us upon this motion to dismiss must be necessarily limited to our jurisdiction on appeal.

The same observations apply to the argument of counsel that the acts of McCardle constituted a military offence, for which he might be tried under the Reconstruction Acts by military commission.    This argument, if intended to convince us that the Circuit Court had no jurisdiction of the cause, applies to the main question which might arise upon the hearing of the appeal.    If intended to convince us that this court has no appellate jurisdiction of the cause, it is only necessary to refer to the considerations already adduced on this point.

We are satisfied, as we have already said, that we have such jurisdiction under the act of 1867, and the motion to dismiss must therefore be

DENIED.