(57 App. Div. 383.)

### PEOPLE ex rel. BILLOTTI v. NEW YORK JUVENILE ASYLUM.

(Supreme Court, Appellate Division, First Department.    January 25, 1901.)

HABEAS CORPUS—INABILITY TO COMPLY WITH WRIT.

Where a juvenile asylum bound out children committed to it, to persons in another state, before it could have known that a writ of habeas corpus would be applied for, and afterwards made an effort to have them brought back into the state, but the children themselves refused to return, and the persons to whom they were indentured refused to give them up, the asylum has no such control over the children as would justify the issuance of a writ of habeas corpus; Code Civ. Proc. § 2015, authorizing the writ where a person is restrained of his liberty "within the state," or where the person against whom the writ is addressed has the power to produce him.

Patterson and O'Brien, JJ., dissenting.

Appeal from special term.

Habeas corpus by the people, on the relation of Giuseppe Billotti, against the New York Juvenile Asylum. From an order directing defendant to restore to relator the custody of the children (66 N. Y. Supp. 157), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Robert Goeller, for appellant.

M. J. Scanlan, for respondent.

RUMSEY, J. We are not at all in doubt as to the rules of law applicable to cases of this kind, and there is no division of opinion in the court as to those rules. If the defendant in proceedings for a writ of habeas corpus has the custody or control of the person whose release is sought, so that it is possible for him to obey the order of the court with respect to that person, the court has jurisdiction, not only to issue the writ, but to make a determination in the matter, and to require the delivery of such person, and this can be done although it appears that the person whose release is sought is without the state; but a writ of habeas corpus is not intended to punish the defendant for improperly depriving a citizen of his liberty, or for illegally deporting him out of the state. That is to be done by the criminal law. The sole object of the writ is to release from imprisonment a person who is unlawfully restrained from his liberty, or, in the case of a child, to take possession of it in order to deliver it to the person who is entitled to its custody. The writ existed at common law, but the proceedings of the court with respect to it are regulated by statute, and the courts must be governed by that statute. Section 2015 of the Code of Civil Procedure provides that a person imprisoned or restrained of his liberty "within the state" is entitled to a writ of habeas corpus. That has been extended by the courts, and properly so, to authorize the court to require the release of a person who is not within the state if the defendant to whom the writ is addressed has the power to produce him and subject him to the power of the court.

Even if it should appear in the petition for the writ that the person whose release is sought is without the state, nevertheless the

court has jurisdiction to issue the writ if the facts show that the person to whom it is directed may have the control of the person confined, or may be able to obey the command of the court by producing him. In such a case, when it appears that the person to whom the writ is directed may be able to produce the imprisoned person, the writ ought to issue, and, if for any reason the defendant is not able to obey it, that fact should be made to appear by the return or the proof, and when it does appear, and not until then, should the writ be vacated.

Although it may appear from the return or the proof that the person to whom the writ is directed, having had the custody of him for whose release the writ is issued, has connived at and assisted in removing that person out of the jurisdiction of the court, no order can be made requiring his production, unless it should appear that such person has yet so much custody and control as that he would be able to obey the order; but, if it appears affirmatively that it is physically impossible for him to obey it, the writ must be vacated, and the petitioner remitted to his remedy in another state, and the defendant must be punished by the criminal law. Code Civ. Proc. § 2052; In re Jackson, 15 Mich. 415; Reg. v. Barnardo, 24 Q. B. Div. 283.

In view of these rules of law, the only question presented in this case is upon the facts. The writ was issued. The defendant made a return. It supported that return by affidavits. It claims that those affidavits show that before the writ was issued, and before there could have been any idea that a writ would be applied for, these children were bound out to persons in Illinois, over whom this court has no jurisdiction, over whom the defendant has no power, and that these persons refuse to produce the children or send them back into this state. The only question is whether, these facts appearing, they answer the writ, and whether the father should not be remitted to his writ of habeas corpus in Illinois against the persons who controlled, and still control, the custody of the children. It appears that the two visitors of the defendant called upon the persons in Illinois who had charge of these children, and asked that they should be sent back to New York, and this request was positively refused; that James Billotti, the oldest son, stated that he absolutely refused to go back; that the person to whom James Billotti was indentured refused to give him up, and stated that, if the indenture should be canceled in any other way than by mutual consent, he should demand an indemnity of $200. Just how it could be canceled except by mutual consent I am not aware, but his affidavit contains no suggestion that he would give up the child at the request of the juvenile asylum or anybody else. The same thing may be said of the affidavit of Lawhead, to whom Annie Billotti was indentured, and the affidavit of McIntosh, to whom Rosie Billotti was indentured. It is quite evident that these children did not want to come back, and that the persons with whom they were indentured intended to keep them. It seems to me that it is indisputable that the New York Juvenile Asylum has no control or custody of these children in any way, and that an order addressed to that society to

produce them would be mere brutum fulmen, and the issuance of the order could only lay the asylum open to a charge of contempt of court for refusing to obey an order which it must have been known at the time it was issued could not be obeyed.

For these reasons, the order should be reversed.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

PATTERSON, J. (dissenting). By the order appealed from in this case, the New York Juvenile Asylum was directed, within a time named, to restore to the custody of the petitioner his three children, who, it is claimed, were within the power, and under the control, of the asylum. The order was made in a habeas corpus proceeding upon a hearing, on a return and a traverse thereto, and on evidence. From the record, the following facts appear: In September, 1897, the relator gave into the possession of the New York Juvenile Asylum his three children, James, Annie, and Rose, upon the agreement that they should be retained for two years, and then returned to him. In June, 1898, the authorities of the asylum, without the assent of the father, but contrary to his protest, sent the children beyond the state of New York, and executed certain indentures by which they were bound out, or apprenticed, to residents of the state of Illinois. In March, 1900, some time after the expiration of the two years for which the children were confided to the care and protection of the asylum, the relator procured the writ now before us, claiming that he was illegally deprived of the custody of his children. At the time the writ was issued, and during all proceedings had under it, the children were not actually within the state of New York, but were in the state of Illinois. The president of the New York Juvenile Asylum, apparently recognizing the fact that it was without lawful right to send the children out of the state of New York, or to dispose of them in such manner that they could not be restored to their parent at the end of the two years, made application to the parties in Illinois having the actual custody of them, and demanded their return, which seems to have been refused, but not absolutely. An agent of the asylum swears that he made demand upon the parties in Illinois having the possession of the children, and they refused to give them up, but those parties have themselves made affidavits, from which it may be inferred that they would surrender the children upon payment of an indemnity. On this state of facts, the learned judge at special term held, in substance, that the children were within the control or power of the New York Juvenile Asylum, and made the order from which this appeal is taken.

The only point requiring consideration relates to the jurisdiction of the court to make the order, it appearing beyond dispute that at the time the writ was sued out the children were not within the state of New York, and had not been within it for nearly two years, and there being no ground from which it could be inferred that they were sent out of the state to defeat process of the court, or to prevent service of a writ of habeas corpus, or to impair the father's right to the custody of his children. All matters connected with

the writ of habeas corpus, from its issuance to the conclusion of proceedings under it, are now regulated by the Code of Civil Procedure. By section 2015 of that Code, it is enacted that a person imprisoned or restrained in his liberty "within the state," for any cause or upon any pretext, except as otherwise provided, may have the writ of habeas corpus or of certiorari for the purpose of inquiring into the cause of imprisonment or restraint, and, in a case prescribed by law, of delivering him therefrom; and it is provided by section 2066 that all the provisions of the article of that Code, except as otherwise expressly prescribed by statute, apply to and regulate the proceedings upon every common-law or statutory writ of habeas corpus, so far as they are applicable. The provisions of the Code, so far as jurisdiction is concerned, are merely re-enactments of the Revised Statutes upon the same subject. The contention of the New York Juvenile Asylum, the appellant here, is that the writ should not have been issued, or, under the return and the traverse and the evidence, it having been issued, should have been dismissed, because of the fact that the children were not within the state of New York, and there could be no inference that they had been clandestinely, or for the purpose of defeating process, removed from the jurisdiction of the court. It is claimed that the very words of section 2015 refer to imprisonment or restraint of liberty of a person within the state, and that that necessarily means that in view of the fact that the writ of habeas corpus is one for deliverance, and not for the punishment of an offender, it can have no efficacy unless it can be executed within the state by bringing the body of the person mentioned in the writ before the court, in order that the cause of his imprisonment may be inquired into. If there were to be none but a literal construction of the statute as it reads to-day, the writ of habeas corpus would be allowed only for the relief of persons actually imprisoned or restrained of their liberty within the state, and it would have no application to children who are kept from their parents or guardians, but who enjoy the largest possible liberty and freedom of action consistent with the protection of childhood. The writ of habeas corpus ad subjiciendum is invokable by parents or guardians purely by analogy; and Judge Brown in People v. Walts, 122 N. Y. 241, 25 N. E. 267, has well expressed in a few words the theory of the law upon the subject. He says:

"The common-law writ of habeas corpus was a writ in behalf of liberty, and its purpose was to deliver a prisoner from unjust imprisonment and illegal and improper restraint. It was not a proceeding calculated to try the rights of parents and guardians to the custody of infant children. It was of frequent use, however, when children were detained from their parents or guardians, on the ground that absence from legal custody was equivalent to illegal restraint and imprisonment."

That which authorizes the issuance and enforcement of a writ against the New York Juvenile Asylum in this case is that having had given to it the custody of these children for a limited time, and on an agreement to return them at the expiration of that time, it refused to so restore them. Its detention of them from the custody of the parent is a detention within the state of New York, if it has power of

restoration.  It is quite plain that the court would not undertake to compel restoration of the children if it were an impossibility for the asylum to restore them, but the jurisdiction to adjudicate and to determine whether the children are within the control and custody of the asylum, and may be restored to the father, does not depend upon their having been taken out of the territory of the state of New York, but upon the ability of the asylum to make restoration within the territory of New York.  There is a great deal to be said on both sides of this subject, and it has received exhaustive and masterly treatment in the supreme court of Michigan.  In re Jackson, 15 Mich. 420.  The statute of that state, like the statute of New York, confines the operation of the writ to persons detained "within this state."  In the case cited, the point was whether a writ of habeas corpus would issue from the supreme court of Michigan to a person within that state, requiring him to bring into the state a minor child under his guardianship in that state, and who had been and continued to be in another state. The court was equally divided upon the subject, and, although the question arose under a very different state of facts from that presented by the record before us, it seems to me that in the opinion of Judge Cooley, which was concurred in by Judge Christiancy, the jurisdiction and authority of the court to require obedience to the writ is so thoroughly established that it is only necessary to refer to that opinion for the learning and argument to vindicate the affirmative view of the proposition.  The same general question of jurisdiction was very learnedly discussed in England in the case of Reg. v. Barnardo, 24 Q. B. Div. 296, and the views of Fry, L. J., as expressed in that case, also seem to me to be quite conclusive of the argument.

It only remains to consider upon the record in this case whether the New York Juvenile Asylum made it clear that it could not produce the children and restore them upon the demand of their father.  I wish it to be distinctly understood that what has been previously said is to be limited to the writ of habeas corpus as affecting children detained from the custody of their parents or guardians. The views expressed arise from a consideration of the origin, history, and peculiar office of the writ of habeas corpus at common law as applied to cases of this character.  On the evidence before us, we find that there was an undoubted wrongful parting by the New York Juvenile Asylum with the possession of these children.  It is claimed that, under the fifth section of chapter 438 of the Laws of 1884, the institution had authority to bind them out by indenture.  Such would have been the case if the asylum had not entered into a compact with the father that the retention of the children by it should continue but for two years.  But, if it had satisfactorily shown that it was impossible to restore the children to the custody of their father, then it might be claimed that the office of the writ was spent, and that it should have been dismissed.  But it was not satisfactorily shown that the authorities of the asylum could not produce the children in court by paying to the persons to whom they were bound that small indemnity which those persons seem to have been willing to accept for the surrender of the children.  It is true that, if the children had been produced in obedience to the writ, it would have been for the court to

determine whether it was for their best interest that they should be delivered into the custody of their father. If they were of a proper age to determine that matter for themselves, or to have their wishes consulted, it would have been the duty of the court to give full consideration to their wishes. But the discussion is displaced when that element is introduced into the case as the determinant factor, for here the parent's right depends, in the first instance, upon the agreement the asylum made with him, either actual or implied, at the time the children were given into its custody, that they would be restored to him at the expiration of the two years.

For these reasons, I am of the opinion that the order appealed from should be affirmed with $10 costs and disbursements.

O'BRIEN, J., concurs.