Ex parte FONG YIM et al.

(District Court, S. D. New York. January 11, 1905.)

1. CHINESE EXCLUSION—HABEAS CORPUS PROCEEDINGS—JURISDICTION.
    Where the chief officer of the Chinese exclusion laws for a state, in
    his return to a writ of habeas corpus directed to him, has admitted that
    the Chinese persons in whose behalf the writ was issued are detained
    by him, and has obtained a stipulation waiving their production in
    court, the court has jurisdiction to inquire into the legality of their
    detention, although they may in fact be confined in another district of
    the state.

2. SAME.
    The courts have jurisdiction to determine in habeas corpus proceedings
    the right of a Chinese merchant domiciled in this country to enter from
    China, or of members of his family whose right is incidental to his own,
    where the remedy by appeal to the Secretary of Commerce and Labor
    has been exhausted, and the right of entry denied.

3. SAME—RIGHT OF ENTRY—ADOPTED CHILDREN OF MERCHANT.
    A Chinese merchant domiciled in the United States has the right to
    bring into this country with his wife minor children legally adopted
    by him in China, where it is shown that the adoption was bona fide,
    and that the children have lived as members of his family and have
    been supported by him for several years.
    [Ed. Note.—Citizenship of the Chinese, see note to Gee Fook Sing v.
    United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A.
    332.]

Habeas Corpus.

Max J. Kohler, for petitioner.
William Michael Byrne, Asst. U. S. Atty.

HOLT, District Judge. These are writs of habeas corpus and
certiorari to test the legality of the detention of two Chinese chil-
dren who have been refused admission to this country. The sub-
stantial facts in the case are that Fong Fook Chung has been for
many years a Chinese merchant, carrying on business and having a
commercial domicile at Philadelphia, Pa. He has been married
twice. His first wife resided in China, and he from time to time
went home to China, and afterwards returned to this country. Two
children, Fong Yim, a boy 10 years old, and Fong Dung, a girl 16 years
old, were adopted when they were babies by Fong Fook Chung and
his wife as their children. They lived with the first wife in China,
and were frequently visited there by Fonk Fook Chung until about
a year ago, when his first wife died. Subsequently Fong Fook
Chung went to China, married again there, and returned to this
country with his second wife and the two adopted children. He
and his wife were permitted to enter this country, but the children
were detained at Malone, N. Y., and after a hearing before F. W.
Berkshire, chief officer of the Chinese exclusion laws for the state
of New York, were denied admission to the United States. An
appeal from his decision was duly taken to the Secretary of Com-
merce and Labor, and the decision was affirmed. Thereupon these
writs were obtained.

The district attorney contends that this court has no jurisdiction, upon the grounds that a writ of habeas corpus cannot be issued by this court to review the alleged illegal detention of persons in the Northern District, and that the decision of the Secretary of Commerce and Labor in this case is final. I think that this court would have no jurisdiction to inquire by habeas corpus into the cause of the detention of these children in the Northern District if the respondent had not admitted in this case that he had them in his custody, and a stipulation had not been entered into between counsel waiving their production in court. Mr. Berkshire is the chief Chinese exclusion officer having jurisdiction throughout the state of New York. His principal office is in the city of New York. The children are detained by his orders, but I presume that he is not the person actually detaining them, any more than the Secretary of Commerce and Labor is such person. The person who actually deprives them of their liberty is presumably the person who keeps them confined in the building where they are staying at Malone. But as Mr. Berkshire in his return admits that the children are detained by him, and he and his counsel have entered into and taken the benefit of a stipulation that the children need not be produced in open court, thus having admitted his power and obligation under the writ to produce them, I think the case is to be decided as though he had in fact produced them and they were present in court. If that had been done, there can be no doubt, in my opinion, that the court would have had jurisdiction to determine whether their detention was legal.

The district attorney also contends that the decision of the Secretary of Commerce and Labor in this case is final. He relies particularly upon the case of Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082. In that case a man who asserted that he was a Chinese merchant having a commercial domicile in this country, and that he had temporarily left the country, was refused permission to enter the United States by the decision of the collector of customs at San Francisco. He did not take an appeal to the Secretary of the Treasury. A writ of habeas corpus was obtained, but dismissed for want of jurisdiction, and this decision was affirmed on appeal by the United States Supreme Court. The court in the opinion held that the remedy of the appellant was by appeal to the Secretary of the Treasury. It was also stated in the opinion that by the act of 1894 the authority of the courts to review the decision of the executive officers was taken away. But I think that strictly that part of the opinion was obiter. The actual decision was that the appellant could not appeal to the courts because he still had a right of appeal to the Secretary of the Treasury. The question whether, after the Secretary of the Treasury had decided the appeal, the appellant could apply to the courts for redress was not strictly before the court for decision. But in the very recent case of United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, certain Chinese persons who claimed that they were born in this country, and were, therefore, citizens of the United States, under the decision of the United States Supreme

Court in United States v. Wong Kim Ark, 169 U. S. 653, 18 Sup. Ct. 456, 42 L. Ed. 890, were excluded from entering the country by an inspector. No appeal from his decision was taken to the Secretary of Commerce and Labor, who is now the officer to whom such appeals can be taken instead of the Secretary of the Treasury, but an application was made to a United States Circuit Court for a writ of habeas corpus. The writ was dismissed for want of jurisdiction. The order dismissing the writ was reversed by the Circuit Court of Appeals on the ground that the parties concerned were entitled to a judicial investigation of their status. This order of the Circuit Court of Appeals was reversed by the United States Supreme Court on the ground that no appeal had been taken from the decision of the inspector to the Secretary of Commerce and Labor. The court held that the remedy provided by the act of 1894 must be exhausted before a resort could be had to the courts, but expressly declined to decide, and left the question open, whether, after the final decision of the Secretary of Commerce and Labor, a further trial might be had in the courts. But if the question is still open to discussion whether the decision of the Secretary of Commerce and Labor is final in respect to the right of a person of Chinese descent who claims to be a citizen of the United States to enter the country, I cannot see why the finality of a similar decision in reference to the right to enter of a Chinese merchant domiciled in this country is not also open to discussion; and if it is open to discussion as to a Chinese merchant, it is open, in my opinion, as to his wife and children, for their right to enter the country is incident to his right.

The language of the Supreme Court in the Lem Moon Sing Case, and the general assertions in various cases since the act of 1894, that the decisions of the exclusion officers are final (Ekiu v. U. S., 142 U. S. 652, 12 Sup. Ct. 336, 35 L. Ed. 1146; Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721, and cases there cited; Turner v. Williams, 194 U. S. 295, 24 Sup. Ct. 719, 48 L. Ed. 979), have made me hesitate to differ from them, even in a special case to which it did not seem to me that the general doctrine applied. But I have found no case where it has been expressly held that a Chinese merchant, domiciled in this country, has no right to appeal to the courts after he has exhausted his appeal to the Secretary of Commerce and Labor; and as the Supreme Court in the Sing Tuck Case, which I consider an analogous case, expressly holds that the question is still open to discussion, I have with much hesitation concluded that there is no controlling authority establishing that this court has no jurisdiction, and that it is therefore the duty of the court to exercise its jurisdiction and decide this case on the merits.

The authority of any country to exclude aliens from it is, of course, unquestionable. But when this country has entered into a treaty with a foreign nation, by which certain subjects of such foreign nation have become entitled to rights to reside and do business in this country, such rights, in my opinion, are legal rights, and I cannot see how the persons entitled to them can be deprived of a resort to the judicial tribunals of this country to protect and enforce them. The treaties made by this country with foreign nations

are declared in the Constitution to be the supreme law, equally with the Constitution and with the acts of Congress passed pursuant to it, and I can perceive no difference in the right of an alien domiciled in this country to resort to the courts of this country for the protection of the rights secured to him by treaties, and the right of a citizen of this country to resort to its courts for the protection of the rights secured to him by the Constitution. In regard to aliens who have no rights protected by treaties, as in the case of ordinary Chinese laborers, the rule is undoubtedly well established by the decisions that the decision of the executive officers, appointed to superintend the right of entrance into this country, is conclusive. There is some authority to the same effect in respect to aliens who have never entered this country, but who claim a right to do so under treaty provisions. But when an alien, in strict accordance with the terms of a treaty, has been allowed to enter, has resided here for many years, has engaged in business, entered into contracts, acquired property, and incurred obligations in reliance on the rights secured to him by the treaty, I cannot believe that it was the intention of Congress, or that it is within the constitutional power of Congress, to take away from such persons the opportunity to resort to the judicial tribunals of this country for the enforcement of their treaty rights. I concur with the statement of Mr. Justice Brewer in Turner v. Williams, 194 U. S. 295, 24 Sup. Ct. 724, 48 L. Ed. 979, when he says:

"I do not believe it within the power of Congress to give to ministerial officers a final adjudication of the right to liberty, or to oust the courts from the duty of inquiry respecting both law and facts. 'The privilege of the writ of habeas corpus shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require it.' Const. art. 1, § 9, cl. 2."

It is claimed that these children, having never before entered this country, stand on the same footing as ordinary Chinese persons who have acquired no right of domicile; but the answer is that their adopted father has such right, and that their right to enter is incident to his right to enter. The question is perhaps not so much concerning their right to enter as it is concerning his right to have them enter. Of course, whether adopted children have the same rights as natural children is a different question, but, assuming that they have, the fact that they have never been in this country does not put them, in my opinion, in the same position as an ordinary Chinese alien who has never been in this country, and who has no relations with any one in it. The decision of the United States Supreme Court that a Chinese merchant domiciled in this country has an inherent right to bring his wife and minor children here, and that they are entitled to enter because occupying that relation, without certificates or compliance with other provisions of the law (United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544), is, it seems to me, decisive upon that subject.

The real question, therefore, in this case, on the merits, is whether a domiciled merchant in this country has the same right to bring in his adopted children as he has to bring in his natural children. The inspector, in his decision, states that it does not seem to him

that the law contemplated covering such cases, as that would give all domiciled merchants an opportunity to adopt children at will and bring them into this country. Of course, the question whether the adoption is a genuine one is a question of fact, open to investigation, and if it were found that the adoption was a sham proceeding for the purpose of evading the exclusion laws, undoubtedly the person claiming such adoption could be excluded. But in my opinion in this case the proof establishes that these were genuine cases of adoption. They occurred many years ago. The children ever since have lived with and have been supported by the adopting parents. The adoption of children is a practice almost universal in all countries. There are different formalities prescribed by different countries, but universally, when the proper proceedings for adoption have been taken, the child so adopted becomes subject to the same obligations and entitled to the same rights as natural children. This is peculiarly the case in China. It is well known that the people of that country consider it a religious duty to have, after death, the rites of sepulture properly discharged by descendants. This makes it especially important, in the opinion of Chinamen, that they leave surviving a son, either actual or adopted. The evidence shows that the practice of adopting children in China is very common, that it takes place substantially without legal formalities, but that the rights and obligations of children adopted and recognized as such are similar to those of natural children. Under these circumstances I can see no difference between the legal status of adopted children and of natural children. The Supreme Court having decided that a Chinese merchant domiciled in this country has the right to bring into it his natural children, I think that the same decision is authority for the proposition that he has the right to introduce his adopted children.

My conclusion is that these children should be released from detention, and permitted to join their adopted father in this country.