**EISENTRAGER et al. v. FORRESTAL,**
Secretary of Defense, et al.

No. 10053.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 8, 1949.

Decided April 15, 1949.

962

Mr. A. Frank Reel, of Boston, Mass., of the Bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of Court, with whom Mr. Wallace M. Cohen, of Washington, D. C., was on the brief, for appellants.

Mr. Ross O'Donoghue, Assistant United States Attorney, of Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, and Mr. John D. Lane, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellees.

Before EDGERTON, PRETTYMAN, and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant is a German national confined in Landsberg Prison, Germany, in the custody of the United States Army. He was a petitioner, on behalf of himself and twenty others in the same situation,[1] for writs of habeas corpus in the District Court of the United States for the District of Columbia. Appellees are the Secretary of Defense, the Secretary of the Army, the Chief of Staff of the Army, and the Joint Chiefs of Staff of the United States. They were respondents in the action below. The District Court dismissed the action for want of jurisdiction, upon the authority of Ahrens v. Clark.[2] The statute, Rev.Stat. 752, 28 U.S.C.A. § 452, now 28 U.S.C.A. § 2241, is that "the several judges * * * of the district courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus * * *."

Prior to May 8, 1945, appellants were civilian employees of the German government in China.[3] On that date Germany surrendered. Thereafter, and until August 15, 1945, the cities in which appellants were located were under control of the military Forces of the Japanese Empire, which continued to wage war against the United States until that date. In August, 1946, appellants were served with charges of violation of the laws of war, in that they had engaged in military activity against the United States after the surrender of Germany. They were tried and convicted by a military commission.

This commission was a United States military commission, constituted by the Commanding General, Nanking, Headquarters Command, by delegation from the

---

[1] Collins v. Traeger, 9 Cir., 1928, 27 F. 2d 842. Throughout this opinion we shall refer to all these persons as appellants.

[2] 1948, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898.

[3] Whether they were employed in civilian agencies or by the armed forces is a disputed fact.

Commanding General, United States Forces, China Theater, pursuant to authority specifically granted by the Joint Chiefs of Staff of the United States. No question of international action or authority is presented.[4]

The immediate jailer of appellants is the Commandant of Landsberg Prison, an American Army officer, who derives his authority from the Commanding General, Third United States Army, and the Commanding General, United States Forces, European Theater (now designated Commanding General, European Command). The petition alleges that the Commandant of the Prison "is subject to the direction of the respondents". The reply of respondents to the rule to show cause says that the Commandant is subject to the supervision of the Commanding Generals of the United States Army in Europe "and not to that of respondents." This conflict in the pleadings seems merely to relate to the immediate physical custody of appellants, and not to concern the supervisory directive power of the Joint Chiefs of Staff or the Chief of Staff of the United States Army over the Commanding Generals. Such is the purport of the brief of respondents. For purposes of this appeal, we assume this to be the situation.[5] Appellants alleged and respondents admitted that appellants are confined in the custody of the United States Army.

Appellants alleged in their petition that their confinement is in violation of Articles I and III of the Constitution of the United States, of the Fifth Amendment thereto, and of other provisions of the Constitution and laws of the United States and of the Geneva Convention of July 27, 1929. They alleged that the military commission was without jurisdiction to try them or the offenses with which they were charged or in the manner in which the proceeding was had.

The question is whether the District Court has power to entertain appellants' petition. This is the question reserved in Ahrens v. Clark[6] and in Ex parte Endo.[7] In fact, the question was not involved in the decision of those cases.

We must answer these questions: (1) Are these petitioners entitled to the writ[8] as a matter of substantive right? (2) If they are so entitled, could an omission in a federal jurisdictional statute deprive them of the privilege? (3) If they are entitled to the writ and cannot be deprived of the privilege, in what court does their petition lie, they and their immediate jailer being outside the territorial jurisdiction of any district court? The answers stem directly from fundamentals. They cannot be found by casual reference to statutes or cases.

We shall not elaborate our discussion but merely state the principles from which we derive our conclusion.

1. We think that any person who is deprived of his liberty by officials of the United States, acting under purported authority of that Government, and who can show that his confinement is in violation of a prohibition of the Constitution, has a right to the writ. This conclusion necessarily follows from the following premises. *First*. The Fifth Amendment, by its terms, applies to "any person".[9]

4 Cf. Koki Hirota v. General of the Army MacArthur, 69 S.Ct. 197.

5 As to the Chief of Staff, see 32 Stat. 831 (1903), as amended, 10 U.S.C.A. § 33a.

6 Supra at 335 U.S. at page 192, n. 4, 68 S.Ct. 1443.

7 1944, 323 U.S 283, 305, 65 S.Ct. 208, 89 L.Ed. 243.

8 We are dealing with the writ of habeas corpus ad subjiciendum only.

9 Mr. Justice Murphy, dissenting in Re Yamashita, 1946, 327 U.S. 1, 26, 66 S.Ct. 340, 353, 90 L.Ed. 499, strikingly phrased the matter thus: "The Fifth Amendment guarantee of due process of law applies to 'any person' who is accused of a crime by the Federal Government or any of its agencies. No exception is made as to those who are accused of war crimes or as to those who possess the status of an enemy belligerent. Indeed, such an exception would be contrary to the whole philosophy of human rights which makes the Constitution the great living document that it is. The immutable rights of the individual, including those secured by the due process clause of the Fifth Amendment, belong not alone to the members of those nations that excel on the battlefield or that subscribe to the democratic ideology. They belong to

964

*Second.* Action of Government officials in violation of the Constitution is void.[10] This is the ultimate essence of the present controversy. *Third.* A basic and inherent function of the judicial branch of a government built upon a constitution is to set aside void action by government officials,[11] and so to restrict executive action to the confines of the constitution. In our jurisprudence, no Government action which is void under the Constitution is exempt from judicial power. *Fourth.* The writ of habeas corpus is the established, time-honored process in our law for testing the authority of one who deprives another of his liberty,[12]—"the best and only sufficient defense of personal freedom."[13] The writ is the indispensable implementation of constitutional guarantees in respect to personal liberty.

At common law the writ issued to test the validity of confinement under English authority beyond the seas, although the decided cases dealt with British subjects.[14]

every person in the world, victor or vanquished, whatever may be his race, color or beliefs. They rise above any status of belligerency or outlawry. They survive any popular passion or frenzy of the moment. No court or legislature or executive, not even the mightiest army in the world, can ever destroy them. Such is the universal and indestructible nature of the rights which the due process clause of the Fifth Amendment recognizes and protects when life or liberty is threatened by virtue of the authority of the United States."

[10] Johnson v. Zerbst, 1938, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Story, Constitution of the United States § 1842, 5th Ed. 1891.

[11] The Federalist, No. 78; Story, op. cit. supra note 10, §§ 1573 et seq., 1621, 1645.

[12] Many histories of the writ have been written, and in them may be found the development of its distinctive characteristics. Church, Habeas Corpus, 2d Ed. 1893; Hurd, Habeas Corpus, 2 Ed. 1876; 9 Holdsworth, History of English Law 108 et seq., 1938; 9 Halsbury, Laws of England 701 et seq., 2d Ed. 1933; Note, 61 Harv.L.Rev. 657 (1948); Cohen, Some Considerations on the Origins of Habeas Corpus, 16 Canadian B.Rev. 92 .(1938). Halsbury's Laws of England, op. cit. supra, states the English law to be: "The writ is applicable as a remedy in all cases of wrongful deprivation of personal liberty. [p. 702.] * * * The judges owe a duty to safeguard the liberty of the subject not only to the subjects of the Crown, but also to all persons within the realm who are under the protection of the Crown and entitled to resort to the Courts to secure any rights which they may have, and this whether they are alien friends or alien enemies. [p. 703.] * * * The writ * * * is a prerogative writ * * *. It is also a writ of right * * *. [p. 704.] The right to the writ is a right which exists at common law independent-

ly of any statute, though the right has been confirmed and regulated by statute. [p. 706.]"

[13] In re Rosier, 1942, 76 U.S.App.D.C. 214, 221, 133 F.2d 316, 323.

[14] Carus Wilson's Case, 7 Q. B. 984, 115 Eng.Rep. 759 (1845); Ex parte Anderson, 3 El. & El. 487, 121 Eng. Rep. 525 (1861). Rex v. Crewe, 102 Law Times Rep. 760 (Ct. of App. 1910). is cited upon the English view of jurisdiction to issue the writ. Petitioner was in the Bechuanaland Protectorate, South Africa, confined under authority of a proclamation of the High Commissioner, which rested upon the authority of an Order in Council, which in turn rested upon the authority of the Foreign Jurisdiction Act of 1890 (53 & 54 Vict. c. 37). The respondent was the Secretary of State for the Colonies. The King's Bench Division (Lord Alverstone, C. J., Ridley and Darling, JJ.) dismissed the petition upon the grounds that the writ could not issue to the Protectorate and could not issue to the Secretary of State. Upon appeal, the Court of Appeal, Supreme Court of Judicature (Vaughan Williams, Farwell and Kennedy, L. JJ.) affirmed, but principally upon the ground that a provision in the Proclamation that no writ calling in question the legality of the arrest or detention of this petitioner should have any effect, was valid. In the course of the opinion, the judges made clear their opinions that the writ could issue at the petition of persons beyond the seas and that the writ could be addressed to an official having authority over the jailer, although they thought that the High Commissioner and not the Secretary would be the proper respondent, since the Secretary had only advisory power. The lengthy discussions of the meaning and effect of the Foreign Jurisdiction Act and of the validity of the Order in Council and of the Proclamation, under British law, are not pertinent here. Parliament and the Crown together could, and did upon occasion, suspend the privi-

It is established in our law[15] that enemy aliens may resort to habeas corpus, and that habeas corpus is the proper proceeding by which to test the jurisdictional authority of military tribunals.[16]

If it be held that no court has jurisdiction to issue a writ of habeas corpus upon petition of a person confined outside the territorial United States, the ruling would deny the protection of the Constitution to citizens of the United States confined abroad by action of and in custody of officials of the United States. The only escape from that conclusion would be to distinguish between citizens and aliens.[17]

We think that constitutional prohibitions apply directly to acts of Government, or Government officials, and are not conditioned upon persons or territory. That is the nub of this whole matter. If the action of Government officials be beyond their constitutional power, it is for that reason a nullity. No more need be proven to establish its invalidity. Absent constitutional power, neither the objective nor the subject matter of an act is material. Whether given circumstances place a given action outside an apparent constitutional prohibition and so within constitutional power, is a different question, to be established by proof and not to be considered unless raised and supported. That is a matter of decision and not of judicial jurisdiction. For these reasons, we think that a distinction between citizens and aliens cannot be made in respect to the applicability of constitutional restrictions upon the power of government.

There is a vast difference between the delegated power of our Federal Government and the unrestricted power of the British Crown and Parliament.[18] Whatever may be the concept of restrictions upon governmental power in that country, and so of the applicability of the writ there, in this country constitutional restrictions are absolute and the writ must apply wherever such a restriction is transgressed and no other remedy is available.

Upon the foregoing considerations, we see no escape from the conclusion we have stated, that any person deprived of his liberty by an official of the United States Government in violation of constitutional prohibitions, has a substantive right to a writ of habeas corpus.

2. We think that if a person has a right to a writ of habeas corpus, he cannot be deprived of the privilege by an omission in a federal jurisdictional statute. This conclusion follows from these premises. *First.* The right to habeas corpus is an inherent common law right.[19] *Second.* The Federal Government cannot suspend the privilege, except when, in cases of rebellion or invasion, the public safety may so require.[20] This prohibition is in

---

lege of the writ, a power which Congress does not have.

The British Habeas Corpus Act of 1862 (25 & 26 Vict. c. 20) provided:

"Sect. 1. No writ of habeas corpus shall issue out of England by authority of any judge or court of justice therein, into any colony or foreign dominion of the Crown where Her Majesty has a lawfully established court or courts of justice having authority to grant and issue the said writ, and to ensure the due execution thereof throughout such colony or dominion." This enactment seems to establish that prior to that time the writ did issue to dominions where there were courts of competent jurisdiction and also that after that date the writ might issue to any place, within British jurisdiction, where there are no courts competent to issue and execute the writ.

There is an English case, in 1939, in which Mr. Justice Cassels, in Vacation Court, held that although the writ would issue on behalf of aliens, it would not apply to an alien in a foreign country. The learned justice relied upon an expression of view by Lord Kennedy in Rex v. Crewe, supra. In re Ning Yi-Ching and others, 56 Times Law Rep. 3. See 6 Solicitor 196 (1939).

15 Ex parte Quirin, 1942, 317 U.S. 1, 25, 63 S.Ct. 1, 87 L.Ed. 3; In re Yamashita, 1946, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499.

16 Cases cited supra, note 15, and Ex parte Milligan, 1866, 4 Wall. 2, 18 L.Ed. 281, and Duncan v. Kahanamoku, 1946, 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688.

17 Wolfson, Americans Abroad and Habeas Corpus; The Trap Begins to Close, 10 Fed.Bar.J. 69 (1948).

18 1 Bl.Comm. *9; Story, Constitution of the United States § 1614, 5th Ed. 1891.

19 3 Bl.Comm. *131, *133.

20 U.S.Const. Art. 1, § 9, cl. 2.

the First Article of the Constitution itself, its importance gauged by the fact that the Constitutional Convention did not leave the possibility of misunderstanding upon the topic to later determination, as they did the several prohibitions later incorporated in the first Ten Amendments. *Third.* Congress could not effectuate by omission that which it could not accomplish by affirmative action. So, if the existing jurisdictional act be construed to deny the writ to a person entitled to it as a substantive right, the act would be unconstitutional. It should be construed, if possible, to avoid that result.

It may be reasoned that "courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction",[21] and that, therefore, a federal court has no jurisdiction outside that which is conferred by congressional enactment, a written law.[22] It might be, theoretically at least, that in ordaining and establishing and conferring jurisdiction upon the inferior courts, Congress might omit mention of some case or cases arising under the Constitution or laws of the United States. In such event, the argument from the above-stated premise might be that the contestants in that controversy were deprived of a forum for the adjudication of their dispute. We doubt that the affirmative conclusion to that proposition would be valid if the case concerned the authority of officials of the United States to act. It is established that a state court cannot inquire, upon petition for habeas corpus, into the validity of the confinement of a person held under the authority of the United States.[23] Therefore, unless the federal jurisdiction statute be construed as co-extensive with governmental action by United States officials, such action outside the specifications of the statute would be wholly immune from judicial power; in other words, outside the necessity for compliance with the Constitution. To state the proposition would seem to refute it.

Moreover, the constitutional grant of judicial power to the Federal Government extends "to all Cases, in Law and Equity, arising under" the Constitution and laws of the United States and under the treaties made under its authority.[24] And the Constitution further provides that the judicial power of the United States "shall be vested" in the Supreme Court and in such inferior courts as Congress may establish.[25] It was held early in our history that these provisions were compulsory upon Congress to confer the whole of the federal judicial power upon some federal court.[26] The Supreme Court has denied that it has jurisdiction to issue a writ upon petition of a person confined outside the United States.[27] It follows that if the case presented by these appellants arises under the Constitution, laws or treaties of the United States, as it clearly does, jurisdiction to entertain it is in some district court by compulsion of the Constitution itself.[28]

In this connection, it is interesting to note that the constitutional prohibitions

---

[21] Marshall, Ch.J., in Ex parte Bollman and Ex parte Swartwout, 1807, 4 Cranch 75, 93, 2 L.Ed. 554, 561.

[22] See Dobie, Habeas Corpus in the Federal Courts, 13 Va.L.Rev. 433, 441 (1927).

[23] Ableman v. Booth, 1859, 21 How. 506, 523, 16 L.Ed. 169, 176; Robb v. Connolly, 1884, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542.

[24] U.S.Const. Art. III, § 2, cl. 1.

[25] U.S.Const. Art. III, § 1.

[26] Martin v. Hunter's Lessee, 1816, 1 Wheat. 304, 4 L.Ed. 97; Story, Constitution of the United States §§ 1590-1597, 1702, 5th Ed. 1891.

[27] Ex parte Betz, 1946, 329 U.S. 672, 67 S.Ct. 39, 91 L.Ed. 593.

[28] If it were to be held that Congress failed to confer upon the inferior federal courts the full judicial power vested in those courts by the Constitution, and that the residuum not so conferred remains in the common law courts until its exercise by federal courts is authorized by the Congress (reasoning similar to that employed with reference to constitutional grants of legislative power), the United States District Court for the District of Columbia could issue the writ in cases falling within that classification. That court is not only a federal court but also has the full common law powers originally held by the courts of Maryland. Organic Act of 1801, §§ 3, 5, 2 Stat. 103, D.C.Code p. XXXIII (1940).

upon federal action contain no such proviso as Section 5 of the Fourteenth Amendment.

Upon the precise problem before us, we conclude that whatever may be the lack of forum in other cases, the Constitution specifically prohibits that result in respect to habeas corpus. Congress cannot suspend that privilege, unless there be invasion or rebellion.

3. We think, upon the basis of the foregoing conclusions, that when a person is deprived of his liberty by the act of an official of the United States outside the territorial jurisdiction of any District Court of the United States, that person's petition for a writ of habeas corpus will lie in the District Court which has territorial jurisdiction over the officials who have directive power over the immediate jailer.

The question here is not whether a court, either state or federal, can exercise its judicial power within the jurisdiction of another and independent government.[29] The question is whether it can exercise that power upon those Government officials within its territorial jurisdiction who have directive power over the immediate jailer outside the United States but acting solely upon authority of this Government.[30] We think that it can, if that be the only means of applying the Constitution to a given governmental action.

We perceive nothing singular in the application of judicial authority to those who have directive power, if such application is the only means of enforcing the prohibitive clauses of the Constitution.[31] "Of the contention that the law provides no effective remedy for such a deprivation of rights affecting life and liberty it may well be said—as in Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406—that it 'falls with the premise.' To deprive a citizen of his only effective remedy would not only be contrary to the 'rudimentary demands of justice' but destructive of a constitutional guaranty specifically designed to prevent injustice."[32]

The statute lends itself to a construction that it is coextensive with executive power, at least in so far as prisoners in jail are concerned. While it states the matter in the negative, it says: "The writ of habeas corpus shall in no case extend to a prisoner in jail unless where he is in custody under or by color of the authority of the United States, * * * or is in custody in violation of the Constitution or of a law or treaty of the United States; * * * ."[33] The statute also says that the writ shall be directed to the person "in whose custody" the party is detained.[34] It is not too violent an interpretation of "custody" to construe it as including those who have directive custody, as well as those who have immediate custody, where such interpretation is necessary to comply with constitutional requirements. Such an interpretation need not affect the doctrine that if the immediate custodian be within the jurisdiction of a federal court, the writ must be directed to him. The Supreme Court said in Ex parte McCardle[35] that the jurisdictional act covers "every possible case of privation of liberty contrary to the National Constitution, treaties, or laws." The statute must be so construed, lest it be invalid as constituting a suspension of the writ in violation of the constitutional provision.

There are expressions in opinions of courts to the effect that the writ runs not

29 Tarble's Case, 1872, 13 Wall. 397, 20 L.Ed. 597. There are numerous other cases involving that problem.

30 Discussion of this topic usually goes back to the concurring opinion of Judge Cooley in Re Jackson, 1867, 15 Mich. 417, 433.

31 McGowan v. Moody, 1903, 22 App. D.C. 148, rested upon the view that the Secretary of the Navy was not the proper party respondent, because he had advisory power only, much the same as the view of the judges as to the Secretary of State in Rex v. Crewe, supra note 14. See Sanders v. Allen, 1938, 69 App.D.C. 307, 100 F.2d 717.

32 Johnson v. Zerbst, 1938, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 146 A.L.R. 357.

33 Rev.Stat. § 753, 28 U.S.C.A. § 453 before revision; now 28 U.S.C.A. § 2241.

34 Rev.Stat. § 755, 28 U.S.C.A. § 455 before revision; now 28 U.S.C.A. § 2243.

35 1868, 6 Wall. 318, 325-326, 18 L.Ed. 816, 817.

only to the jailer but to those who have power over him.[36] But we do not rest our decision upon those authorities. We rest it, as we have pointed out, directly upon the fundamental principles involved.

■ It is suggested that the foregoing result presents a practical problem of some difficulty. There are twenty-one of these appellants, and they are in Germany. To issue the writ would be to require that they be transported to this country for the hearing. But the Supreme Court made clear in Walker v. Johnston[37] and again in Ex parte Quirin[38] that this personal presence is not required as a first step. The District Court issued in this case a rule to show cause. Reply was made to the rule, and affidavits have been filed by the parties. Upon those papers, the controlling issues of law may be framed and presented in complete and satisfactory fashion. Upon the disposition of those issues, there may or may not remain other issues to be disposed of requiring the presence of the petitioners. But until that eventuality develops, the steps necessary to protect the rights of petitioners may be taken seriatim.

■ Upon its further consideration of the case, the District Court may find that one or more of respondents have no directive power, by line of authority, over the jailer of these appellants. That determination would depend upon statutes, executive orders, and War Department regulations. If such be found, the court will dismiss the action as to that or those respondents.

The judgment of the District Court dismissing the petition for lack of jurisdiction is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

---

[36] See Vaughan Williams, L. J., in Rex v. Crewe, supra note 14; Rivers v. Mitchell, 1881, 57 Iowa 193, 10 N.W. 626 (although this case related to the problem of custody of minor children); Ex parte Emerson, 1940, 107 Colo. 83, 108 P.2d 866; People ex rel. Billotti v. New York Juvenile Asylum, 1901, 57 App.Div. 383, 68 N.Y.S. 279; Sanders v. Allen, 1938, 69 App.D.C. 307, 100 F.2d 717; Ex parte Fong Yim, D.C.S.D.N.Y.1905, 134 F. 938; Fielder v. Sadler, 1942, 193 Ga. 268, 18 S.E.2d 486.

[37] 1941, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830.

[38] 1942, 317 U.S. 1, 24, 63 S.Ct. 1, 87 L.Ed. 3.